IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUAM INDUSTRIAL SERVICES, INC., <br> d/b/a Guam Shipyard, <br> P.O. Box 13010 <br> Santa Rita, Guam 96915 <br><br> Plaintiff, <br><br> v. <br><br> THE HONORABLE DONALD H. RUMSFELD, SECRETARY OF DEFENSE <br> U.S. Department of Defense <br> 1000 Defense Pentagon <br> Washington, D.C. 20301-1000 <br><br> and <br><br> THE HONORABLE GORDON R. ENGLAND, SECRETARY OF THE NAVY <br> U.S. Department of the Navy <br> 1000 Navy Pentagon <br> Washington, D.C. 20350-1000 <br><br> and <br><br> THE HONORABLE NORMAN Y. MINETA, SECRETARY OF TRANSPORTATION, <br> U.S. Department of Transportation <br> 400 7th Street, SW <br> Washington, D.C. 20590 <br><br> and <br><br> THE HONORABLE JOHN JAMIAN, ACTING ADMINISTRATOR, MARITIME ADMINISTRATION, <br> U.S. Department of Transportation <br> 400 7th Street, SW <br> Washington, D.C. 20590 <br><br> Defendants. | Case No.: <br><br> CASE NUMBER 1:05CV01599 <br><br> JUDGE: Ricardo M. Urbina <br><br> DECK TYPE: Administrative Agency Review <br><br> DATE STAMP: 08/10/2005 |

## COMPLAINT

**(For Declaratory and Injunctive Relief to Prevent Violations of 10 U.S.C. § 7310)**

Plaintiff Guam Industrial Services, Inc., d/b/a Guam Shipyard ("GIS" or "Guam Shipyard"), by undersigned counsel, hereby submits this Complaint against Defendants Donald H. Rumsfeld, Secretary of the Department of Defense ("DoD"), Gordon R. England, Secretary of the Department of the Navy ("Navy"), Norman Y. Mineta, Secretary of the Department of Transportation ("DOT") and John Jamian, Acting Administrator, Maritime Administration ("MARAD").

GIS seeks declaratory and injunctive relief, pursuant to the Administrative Procedures Act, 5. U.S.C. §§ 702-706 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to prohibit the United Stated Government, acting through DoD, the Navy, DOT and/or MARAD from continuing to solicit bids from and/or award contracts to foreign shipyards in connection with non-voyage repairs of naval vessels homeported in the United States, in violation of 10 U.S.C. § 7310(a) ("Section 7310(a)").

### The Parties

1. GIS is a corporation organized and existing under the laws of the Territory of Guam, with its principal place of business located at Guam Shipyard, Santa Rita, Guam. Its mailing address is P.O. Box 13010, Santa Rita, Guam, 96915.

2. GIS owns and operates Guam Shipyard, the only U.S. owned and operated commercial shipyard west of the International Dateline. Guam Shipyard has extensive experience in ship repairs, and has a work force of approximately two hundred and fifty employees, all of whom are United States citizens.

3. GIS has standing in this case because the actions of DoD, the Navy, DOT and/or MARAD, in failing to comply with and/or enforce Section 7310(a), have injured and

adversely affected Guam Shipyard by illegally diverting non-voyage repair contracts for naval vessels homeported in the United States to foreign shipyards, notwithstanding Guam Shipyard's reasonable, responsible and responsive bids.

4. Unless this Court grants the relief sought herein, future non-voyage repair contracts for naval vessels homeported in the United States will continue to be awarded to foreign shipyards to the detriment of Guam Shipyard, and other similarly situated private United States shipyards, in violation of Section 7310(a).

5. As set forth herein, the economic injury and harm sustained or to be sustained by Guam Shipyard, and other similarly situated private United States shipyards, is within the zone of interests Congress intended to protect in enacting Section 7310(a).

6. Defendant Donald H. Rumsfeld is the Secretary of DoD, a federal agency of the United States government, located at 1000 Defense Pentagon, Washington, D.C. 20301-1000.

7. Defendant Gordan R. England is the Secretary of the Navy, a federal agency of the United States government, located at 1000 Navy Pentagon, Washington, D.C. 20350-1000.

8. Defendant Norman Y. Mineta is the Secretary of DOT, a federal agency of the United States government, located at 400 7th Street, SW, Washington, D.C. 20590.

9. Defendant John Jamian is the Acting Administrator of Maritime Administration ("MARAD"), a division or agency of DOT, located at 400 7th Street, SW, Washington, D.C. 20590.

## Jurisdiction and Venue

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this case involves the Court's federal question jurisdiction in that GIS (a) seeks a determination by the Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, regarding the

proper construction, meaning and effect of 10 U.S.C. § 7310(a); and (b) seeks declaratory and injunctive relief from the Court, pursuant to 5 U.S.C. §§ 702-706, determining that the Defendants' solicitation of bids from and/or awarding contracts to foreign shipyards in connection with non-voyage repairs of naval vessels homeported in the United States is arbitrary, capricious, not otherwise in accordance with law, in excess of statutory authority, short of statutory right and without observance of procedure required by law, and that such acts and practices are therefore prohibited by law.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e).

## General Allegations

### SS Petersburg

12. The SS Petersburg (T-AOT 9101) is a government-owned tanker that is part of the United States Ready Reserve Force ("RRF"), a select group of ships within the National Defense Reserve Fleet, which are maintained by DOT's MARAD and funded from the Navy-controlled National Defense Sealift Fund.

13. Although the SS Petersburg is part of the RRF, it is currently activated for duty with the Prepositioning Program, a program funded by the U.S. Navy and administered by and under the direction of the Navy's Military Sealift Command (the "MSC Prepositioning Program").

14. The MSC Prepositioning Program supports all branches of the U.S. military. Prepositioning ships are strategically positioned in key ocean areas, making it possible to deploy equipment, fuel, and supplies to support U.S. military forces on short notice during times of war or as a result of other contingencies.

15. Prepositioning ships are sub-divided into three separate elements: Combat Prepositioning Force ships, Maritime Prepositioning Force ships, and Logistics Prepositioning Ships.

16. All prepositioning ships are under the operational control of the U.S. Navy's MSC area commands, directly supporting the Navy's fleet commanders. The actual day-to-day control of the ships is exercised by one of three Maritime Prepositioning Ship squadrons ("MPS Squadron"). Those squadrons are each commanded by a U.S. Navy captain.

17. The SS Petersburg is an element of and assigned to MPS Squadron Three, which directs and controls the ships of the MSC Prepositioning Program in the Western Pacific Ocean. In addition to being a component of the U.S. Navy's MSC, administratively reporting to the Prepositioning Program Manager at MSC Headquarters in Washington, MPS Squadron Three is an operational asset of the U.S. Navy's Seventh Fleet.

18. The SS Petersburg is homeported and prepositioned in Guam, a United States territory.

**Interocean American Shipping Corporation**

19. On June 21, 2005, Interocean American Shipping Corporation ("IASC"), a private corporation with its principal place of business located in Voorhees, New Jersey, issued a Request for Price, RFP # 05-G-207-077 ("RFP"), in connection with drydock repairs needed with respect to the SS Petersburg.

20. According to the RFP, IASC purported to solicit proposals for such repairs in accordance with IASC's ship manager contract with MARAD, as an agent for MARAD.

21. Guam Shipyard submitted a proposal in response to the RFP.

22. As of the date that Guam Shipyard submitted its proposal to IASC, the SS Petersburg was docked approximately 300 yards from Guam Shipyard.

23. IASC rejected Guam Shipyard's proposal, and, upon information and belief, awarded the drydocking repair contract for the SS Petersburg to a shipyard from Singapore.

24. Upon information and belief, the SS Petersburg was scheduled to depart for Singapore on or about August 7, 2005, for said repairs.

25. As a proximate result of IASC, as MARAD's agent, including foreign shipyards in the solicitation in violation of 10 USC § 7310 and awarding the drydocking repair contract for the SS Petersburg to a foreign shipyard, Guam Shipyard and other United States shipyards were injured.

26. The awarding of repair contracts for RRF ships to foreign shipyards has been on-going, Specifically, over the past seven years, GIS has submitted proposals for repairs to other RRF vessels, but many of the contracts for such repair work have also been awarded to various foreign shipyards, to the detriment of Guam Shipyard.

### Section 7310(a), the DOT/DoD Memorandum of Agreement and the 1996 MARAD Ship Manager Contract

27. Section 7310(a) expressly prohibits the United States Government from awarding non-voyage repair contracts for naval vessels homeported in the United States to foreign shipyards:

> **Vessels with homeport in United States.** – A navel vessel (or any other vessel under the jurisdiction of the Secretary of the Navy) the homeport of which is in the United States may not be overhauled, repaired, or maintained in a shipyard outside the United States or Guam, other than in the case of voyage repairs.

10 U.S.C. § 7310(a).

28. Moreover, pursuant to paragraph 5(b) of a Memorandum of Agreement between DoD and DOT ("MOA"), DoD and MARAD, on behalf of DOT, agreed that "[a]ll shipyard and ship repair facility work to RRF ships will be accomplished by MARAD (either directly or through its ship operating companies) and performed in the United States (except for necessary voyage repairs while overseas), in accordance with statute and DOT regulations."

29. Further, paragraph 1.2 of MARAD's contract with its ship manager subcontractors, including IASC, effective July 30, 1996, (the "1996 MARAD Ship Manager Contract"),

required that "The Ship Manager as an Agent of the U.S. Government will abide by and conform to all Federal statutes during ALL PHASES of this contract."

30. Paragraph H.1 of the 1996 MARAD Ship Manager Contract, part of Section H, which detailed "Special Contract Requirements," specifically required that all repair work to RRF ships be performed in a United States shipyard:

> All repair and or upgrading work required in conjunction with the contract . . . necessary to meet all requirements of this contract shall be accomplished in a U.S. shipyard or U.S. ship repair facility, unless the work is an emergency.

31. Upon information and belief, all subsequent MARAD ship manager contracts contained similar requirements that all non-emergency repair work to RRF ships be performed in a U.S. shipyard.

32. Section 7310(a), the MOA and the 1996 MARAD Ship Manager Contract reflect a vital national policy to protect the economic stability and viability of the United States shipyard industry in the face of increased foreign competition.

33. Moreover, Section 7310(a), the MOA and the 1996 MARAD Ship Manager Contract advance a strong national security interest in ensuring that U.S. naval vessels are adequately and appropriately handled and maintained by regulated U.S. shipyards.

34. Notwithstanding the express provisions of Section 7310(a), the MOA, and the 1996 MARAD Ship Manager Contract, DOT, and specifically, MARAD, acting through its agent, IASC, illegally and improperly solicited bids from and awarded a contract to a foreign shipyard in connection with non-voyage repairs for a naval vessel homeported in the United States.

35. Further, or in the alternative, DoD, the Navy, and/or MARAD, on behalf of DOT, have failed and refused to comply with and/or enforce Section 7310(a) by failing to prohibit the solicitation of bids from and/or the awarding of a contract to a foreign shipyard in

connection with non-voyage repairs for a naval vessel homeported in the United States.

36. Further, or in the alternative, DoD and/or MARAD, on behalf of DOT, have failed and refused to comply with and/or enforce paragraph 5(b) of the MOA by failing to prohibit the solicitation of bids from and/or the awarding of a contract to a foreign shipyard in connection with non-voyage repairs to an RRF ship.

37. Further, or in the alternative, MARAD has failed and refused to comply with and/or enforce paragraph H.1 of the 1996 Ship Manager Contract by failing to prohibit the solicitation of bids from and/or the awarding of a contract to a foreign shipyard in connection with non-voyage repairs to an RRF ship.

38. Guam Shipyard, and other similarly situated private U.S. shipyards, are continuously submitting bids and proposals to DoD, the Navy, MARAD or DOT, and/or agents of DoD, the Navy, MARAD or DOT, for non-voyage repair work in connection with naval vessels homeported in the United States.

39. As a result, Guam Shipyard, and other similarly situated private U.S. shipyards, stand to be harmed repeatedly by the illegal solicitation of bids from and the awarding of contracts to foreign shipyards for such repair work.

## Claim for Relief

40. GIS repeats and realleges the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41. The foregoing acts and practices of the Defendants were arbitrary, capricious, not otherwise in accordance with law, in excess of statutory authority, short of statutory right and without observance of procedure required by law, and thus, should be held unlawful and set aside, in accordance with 5 U.S.C. § 706(2).

## Prayer for Relief

WHEREFORE, Plaintiff Guam Industrial Services, Inc., d/b/a Guam Shipyard, prays that the Court enter judgment in its favor and against the Defendants as follows:

1. Declaring that DOT, and specifically, MARAD, acting through its agent, IASC, violated 10 U.S.C. § 7310(a) by soliciting bids from and awarding a contract to a foreign shipyard in connection with non-voyage repairs to the SS Petersburg.

2. Declaring that DoD, the Navy, DOT and/or MARAD violated 10 U.S.C. § 7310(a) by failing to prohibit the solicitation of bids from and the awarding of a contract to a foreign shipyard in connection with non-voyage repairs to the SS Petersburg.

3. Declaring that DoD, DOT and/or MARAD violated paragraph 5(b) of the MOA by failing to prohibit the solicitation of bids from and the awarding of a contract to a foreign shipyard in connection with non-voyage repairs to the SS Petersburg.

4. Declaring that MARAD violated the ship manager contract in effect at the time IASC issued its RFP for the SS Petersburg on June 21, 2005, by failing to prohibit the solicitation of bids from and the awarding of a contract to a foreign shipyard in connection with non-voyage repairs to the SS Petersburg.

5. Declaring that the actions and practices of DoD, the Navy, DOT and/or MARAD, in permitting the solicitation of bids from and the awarding of a contract to a foreign shipyard in connection with non-voyage repairs to the SS Petersburg were arbitrary, capricious, not otherwise in accordance with law, in excess of statutory authority, short of statutory right and without observance of procedure required by law, and thus, should be held unlawful and set aside, in accordance with 5 U.S.C. § 706(2).

6. Declaring that 10 U.S.C. § 7310(a), the MOA and MARAD's ship manager contracts prohibit the solicitation of bids from and the awarding of contracts to foreign shipyards in connection with non-voyage repairs to all RRF ships, or, at a minimum, to all RRF ships

activated for duty with the Navy's MSC Prepositioning Program, including, but not limited to, the SS Petersburg.

7. Declaring that the actions and practices of DoD, the Navy, DOT and/or MARAD, in permitting the solicitation of bids from and the awarding of contracts to foreign shipyards in connection with non-voyage repairs to all RRF ships, or, at a minimum, to all RRF ships activated for duty with the Navy's MSC Prepositioning Program, including, but not limited to, the SS Petersburg, were arbitrary, capricious, not otherwise in accordance with law, in excess of statutory authority, short of statutory right and without observance of procedure required by law, and thus, should be held unlawful and set aside, in accordance with 5 U.S.C. § 706(2).

8. Preliminarily and permanently enjoining the Defendants, and all persons or entities acting with their consent, from having any non-emergency, non-voyage repairs to the SS Petersburg be conducted by any foreign shipyard.

9. Preliminarily and permanently enjoining the solicitation of bids from and the awarding of contracts to foreign shipyards in connection with non-voyage repairs to any RRF ship, or, at a minimum, to any RRF ship activated for duty with the Navy's Prepositioing Program, including, but not limited to, all future repairs to the SS Petersburg.

10. Issuing writs of prohibition and/or mandamus as necessary and appropriate under 28 U.S.C. § 1651.

11. Awarding GIS reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(b).

12. Granting GIS such other and further relief as this Court deems appropriate.

Respectfully submitted,

TIGHE PATTON ARMSTRONG TEASDALE P.L.L.C.

BY: _____
Thomas Earl Patton (D.C. No. 009761)
John B. Montgomery (D.C. No. 460221)
David Taylor (D.C. No. (D.C. No. 91280)
1747 Pennsylvania Avenue, NW, Suite 300
Washington, D.C. 20006-4604
Telephone: (202) 454-2800
Facsimile: (202) 454-2805

*Attorneys For Plaintiff*

**Of Counsel:**

ARMSTRONG TEASDALE LLP
Edwin L. Noel (MO No. 24184)
Jacqueline Ulin Levey (MO No. 51222)
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
Telephone: (314) 621-5070
Facsimile: (314) 621-5065