**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
                                                                           )
GUAM INDUSTRIAL SERVICES, INC.,            )
d/b/a Guam Shipyard,                                     )
                                                                           )
          Plaintiff,                                                   )
                                                                           )
                    v.                                                 )          Civil Action No. 05-1599 (RMU)
                                                                           )
DONALD H. RUMSFELD, Secretary of          )
Defense, et al.,                                              )
                                                                           )
          Defendants.                                            )
_____ )

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR**
**A TEMPORARY RESTRAINING ORDER**

Defendants, by their undersigned attorneys and pursuant to LCvR 7(b) and the

Minute Order entered by the Court earlier today, hereby respectfully submit the following

memorandum of points and authorities in opposition to plaintiff's motion for a temporary

restraining order in the above-captioned civil action.

**Background**

Plaintiff has requested that the Court issue a temporary restraining order to enjoin

defendants "from having repairs and maintenance to the SS Petersburg performed in any

foreign shipyard pending the Court's decision on this matter upon Plaintiff's Motion for

Preliminary Injunction," which was filed on August 19, 2005. *See* Plaintiff's

Memorandum in Support of its Motion for a Temporary Restraining Order (hereafter cited as "Pl. Mem."), Proposed Order.  The SS PETERSBURG is a government-owned tanker that is part of the United States Ready Reserve Force ("RRF"), a component of the National Defense Reserve Fleet maintained by the Secretary of Transportation pursuant to 50 App. U.S.C.A. § 1744.  *See* Plaintiff's Complaint filed August 10, 2005 (hereafter cited as "Complaint"), ¶ 12 at p. 4.  Although the SS PETERSBURG is part of the RRF, it is currently activated for duty with the Prepositioning Program administered by the United States Navy's Military Sealift Command.  *See id.*, ¶ 13.  *See also* http://www.msc.navy.mil.

On June 21, 2005, Interocean American Shipping Corporation ("IASC"), a private corporation with its principal headquarters in Voorhees, New Jersey, issued a Request for Price ("RFP") in connection with drydock repairs needed with respect to the SS PETERSBURG.  *See* Complaint, ¶ 19 at p. 5.  In particular, IASC solicited proposals for such repairs pursuant to a ship manager contract that had been entered into between IASC and the Department of Transportation's Maritime Administration ("MARAD") pursuant to 50 App. U.S.C.A. § 1744(c)(2).  *See* Complaint, ¶ 20 at p. 5.  *See also* News Release MARAD 13-05, *U.S. Maritime Administration Ushers in New Contracts to Run Ready Reserve Force*, July 28, 2005, http://www.dot.gov/affairs/marad1305.htm.

Plaintiff submitted a proposal in response to IASC's RFP.  *See* Complaint, ¶ 21 at p. 5.  After learning that IASC had rejected its proposal, plaintiff filed this civil action.

*See id.*, ¶ 23 at p. 5.  When plaintiff filed its complaint on August 10, 2005, plaintiff had

acquired information sufficient to cause plaintiff to believe: (1) that IASC had "awarded

the drydocking repair contract for the SS Petersburg to a shipyard [in] Singapore," *id.*,

and (2) that "the SS Petersburg was scheduled to depart for Singapore on or about August

7, 2005, for said repairs," *id.*, ¶ 24 at p. 5.

On August 19, 2005, plaintiff filed a motion for a preliminary injunction to restrain

defendants "from having any non-emergency, non-voyage repairs, overhauls or

maintenance to the SS Petersburg, or to any other vessel under the jurisdiction of the

Secretary of the Navy" and "from soliciting bids from, or awarding contracts to, foreign

shipyards for any non-voyage repairs, overhauls or maintenance of vessels under the

jurisdiction of the Secretary of the Navy."  *See* Plaintiff's Motion for Preliminary

Injunction.  Earlier today (August 23, 2005) after being advised by defendants that the SS

PETERSBURG is currently in the Singapore shipyard and that repairs have commenced,

plaintiff moved for the entry of a temporary restraining order.  *See* Plaintiff's Renewed

Motion for Temporary Restraining Order.

## **Legal Standards**

The criteria that govern the issuance of interim injunctive relief in the District of

Columbia Circuit are well-settled.  In order for the Court to grant such relief, the plaintiff

must show: (1) a strong likelihood of prevailing on the merits of its claim; (2) that it will

suffer irreparable harm in the absence of an interim injunction; (3) that, balancing

hardships, the issuance of an injunction will not substantially harm other interested parties; and (4) that the public interest favors the requested relief. *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (per curiam); *Washington Metropolitan Area Transportation Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843-44 (D.C. Cir. 1977).

The Court should balance the strengths of the moving party's arguments under each of the four criteria, thereby permitting the Court to issue injunctive relief when the likelihood of success is high but the probability of irreparable harm is low, and vice versa. *See CitiFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Nevertheless, although the test is a flexible one, both likelihood of success and irreparable injury must be shown. *See, e.g., District 50, United Mine Workers v. Int'l Union, United Mine Workers*, 412 F.2d 165, 167 (D.C. Cir. 1969) ("A party seeking injunctive relief must show both that it will suffer irreparable harm if an injunction is not issued and that there is a substantial likelihood it will prevail on the merits when the case is tried."); *The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 72-74 (D.D.C. 1992). Moreover, an interim injunction is a drastic remedy that should not be granted except in extraordinary circumstances. *See, e.g., Yakus v. United States*, 321 U.S. 414 (1944); *Kahane v. Sec'y of State*, 700 F. Supp. 1162, 1165 (D.D.C. 1988).

In this case, plaintiff's motion for a temporary restraining order "faces an additional hurdle because it seeks a mandatory injunction as opposed to a prohibitive

injunction." *Mylan Pharmaceuticals, Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000). Specifically, plaintiff is seeking to stop the performance of a contract, and thereby change the status quo. The SS PETERSBURG has arrived at the Singapore shipyard, significant repair work is underway, and the ship is now disabled and unable to move under its own power. *See* Declaration of William H. Cahill (hereafter cited as "Cahill Dec."), ¶ 11 [copy attached hereto as Exhibit 1].

The usual purpose of a preliminary injunction is to "preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). On the other hand, "where an injunction is mandatory -- that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act -- the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that it is entitled to relief or that 'extreme or very serious damage' will result for the denial of the injunction." *Phillip v. Fairfield University*, 118 F.3d 131, 133 (2d Cir. 1997); *accord, Nat'l Conference on Ministry v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003); *Columbia Hosp. for Women Foundation, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998).

Plaintiff attempts to avoid this principle by asserting that "[d]efendants are seeking to accelerate the repair process unnecessarily" and have engaged "an unseemly and unnecessary rush to foreclose interim relief." *See* Pl. Mem. at p. 3. In fact, the allegations in plaintiff's own complaint prove that plaintiff failed to move promptly to

protect its rights in this matter and that the situation with which the Court is now presented is attributable to plaintiff's delay. In its complaint, filed on August 10, 2005, plaintiff admits that it knows that its proposal to repair the SS PETERSBURG had been rejected by IASC and that plaintiff has sufficient information to believe that the repair contract had been awarded to a shipyard in Singapore and that the SS PETERSBURG was scheduled to depart for Singapore on or about August 7, 2005, for the repairs. *See* Complaint, ¶¶ 23-24 at p. 5.[1] Despite this knowledge, plaintiff chose to wait until August 19 to move for a preliminary injunction and until August 23 to seek a temporary restraining order. Accordingly, plaintiff's attempt to blame the defendants for altering the status quo is without merit. For this reason the principle that a court's power to issue a mandatory injunction should be "sparingly exercised" is fully applicable here. *See Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969).

## Plaintiff Is Not Entitled To A Temporary Restraining Order

Plaintiff is not entitled to a temporary restraining order under the foregoing legal standards. Not only has plaintiff failed to demonstrate a substantial likelihood of success on the merits, plaintiff has also failed to show the existence of any irreparable harm or

---

[1] "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985); *accord, Soo Line RR Co. v. St. Louis Southwestern Railway Co.*, 125 F.3d 481, 483 (7th Cir. 1997) (citing authorities).

that granting interim injunctive relief will serve the public interest and not harm other parties.

### A.    Likelihood of Success

Plaintiff contends that performing repairs to the SS PETERSBURG in a foreign shipyard violates 10 U.S.C.A. § 7310(a), a Memorandum of Agreement between the Department of Defense and MARAD, and MARAD's contract with IASC. *See* Pl. Mem. at pp. 7-8, 14-17. There are a number of reasons why plaintiff is unlikely to succeed on the merits of these claims.

First, plaintiff has failed to join an indispensable party under Fed. R. Civ. 19(a). The repair contract for the SS PETERSBURG is between IASC and the shipyard in Singapore, neither of which has been made a party to this action. *See* Complaint, ¶¶ 19-23 at p. 5. Furthermore, contrary to plaintiff's claims, *see, e.g.*, Pl. Mem. at pp. 3 & 6, MARAD's ship managers, including IASC, acquire maintenance services through approved commercial subcontracting methods, not as "agents" of the government. *See* Cahill Dec., ¶ 7. The Court of Appeals has recognized that "[n]umerous cases hold that an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) (internal quote omitted; citing authorities); *see Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1495-96 (D.C. Cir. 1995). In

accordance with this rule, plaintiff's failure to join the parties to the repair contract

precludes consideration of plaintiff's claims.

Second, 10 U.S.C.A. § 7310(a) is not applicable to the repair contract for the SS

PETERSBURG.  This statute provides as follows:

> **Vessels with homeport in the United States.** -- A naval vessel (or any
> other vessel under the jurisdiction of the Secretary of the Navy) the
> homeport of which is in the United States may not be overhauled, repaired,
> or maintained in a shipyard outside the United States or Guam, other than in
> the case of voyage repairs.

As plaintiff recognizes, "[c]ourts review an agency's interpretation of [a] statute

under the well known and established *Chevron* standard.  *See* Pl. Mem. at p. 15 (citing

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)).

The first step under *Chevron* is to inquire "whether Congress has directly spoken to the

precise question at issue.  *Chevron*, 467 U.S. at 842.  As explained by the Court of

Appeals, "if Congress has directly spoken that is the end of the matter and we must give

effect to the unambiguously expressed intent of Congress."  *Public Citizen v. HHS*, 332

F.3d 654, 59 (D.C. Cir. 2003) (internal quote omitted).  "If, however, the statute is silent

or ambiguous with respect to the specific issue, we must move to the second step and

must defer to the agency's interpretation as long as it is based on a permissible

construction of the statute."  *Id.* (internal quote omitted).

Of course, full *Chevron* deference is not available in every case.  The Supreme

Court clarified the applicability of *Chevron*-level deference in *United States v. Mead*

-8-

*Corp.*, 533 U.S. 218 (2001).  The *Mead* Court held that the applicability of *Chevron*-level

deference turns on

> when it appears that Congress delegated authority to the agency generally to
> make rules carrying the force of law, and that the agency interpretation
> claiming deference was promulgated in the exercise of that authority.
> Delegation of such authority may be shown in a variety of ways, as by an
> agency's power to engage in adjudication or notice-and-comment
> rulemaking, or by some other indication of a comparable congressional
> intent.

*Id.* at 226-27.  Although most cases qualifying for *Chevron* deference have involved

notice-and-comment rulemaking or formal adjudication, the absence of such procedures

is not dispositive, and the Supreme Court has given *Chevron* deference to agency

interpretations "even when no administrative formality was required and none was

afforded."  *Id.* (citing *NationsBank v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256-

57 (1995); *see Barnhardt v. Walton*, 122 S. Ct. 1265, 1271 (2002) ("the fact that the

Agency previously reached its interpretation through means less formal than 'notice and

comment' rulemaking . . . does not automatically deprive that interpretation of the judicial

deference otherwise due"); *Edelman v. Lynchburg College*, 122 S. Ct. 1145, 1150 (2002)

(same).

The applicable agency interpretation of 10 U.S.C.A. § 7310(a) is contained in

Commander Military Sealift Command ("COMSC") Instruction 4700.15A,

*Accomplishing Ship Repair in Foreign Ship Yards* (dated 2 February 2000) [copy attached

hereto as Exhibit 2], www.msc.navy.mil/instructions/pdf/m470015a.pdf.  This instruction

was promulgated in accordance with a number of statutes that address the authority of the Navy to prescribe its own regulations.  Section 6011 of United States Code Title 10 provides that "United States Navy Regulations shall be issued by the Secretary of the Navy."  In 1986, Congress enacted the Goldwater-Nichols Department of Defense Reorganization Act which granted each of the service secretaries the authority to prescribe regulations to carry out his or her statutory functions, powers and duties.  *See* Pub. L. 99-443.  Pursuant to 5 U.S.C.A. § 301, "[t]he head of an Executive department or military department may prescribe regulations for the government of his department."  In addition, 10 U.S.C.A. § 5013(b) states that "the Secretary of the Navy is responsible for, and has authority necessary to conduct, all affairs of the Department of the Navy."  And, 10 U.S.C.A. § 5013(g) states that the Secretary of the Navy may "prescribe regulations to carry out his functions, powers and duties."  Under this umbrella of delegated authority, the Navy has broad authority to carry out its functions and to prescribe regulations.

COMSC Instruction 4700.15A sets forth a number of definitions applicable to 10 U.S.C.A. § 7310(a) for purposes of determining compliance with the statute.  These definitions include "vessel under the jurisdiction of the Secretary of the Navy," "homeport," and "voyage repairs."  Most significantly for purposes of the instant case, the instruction expressly provides that "MARAD's Ready Reserve Force (RRF) vessels," such as the SS PETERSBURG, "are not considered to be under the jurisdiction of the Secretary of the Navy and therefore are not required to comply with the provisions of

Title 10 U.S. Code, Section 7310(a)." *See* COMSC Instruction 4700.15A, ¶ 4.d.. This provision is consistent with 50 App. U.S.C.A. § 1744(a), which assigns to the Secretary of Transportation responsibility to "maintain a National Defense Reserve Fleet, including any vessel assigned by the Secretary to the Ready Reserve Force component of the fleet."

Furthermore, even if the SS PETERSBURG were deemed to be under the jurisdiction of the Secretary of the Navy, 10 U.S.C.A. 7310(a) would still be inapplicable, for two reasons. First, the statute would not apply because the "homeport" of the SS PETERSBURG in outside the United States. *See* Complaint, ¶ 18 at p. 5 ("The SS PETERSBURG is homeported and prepositioned in Guam, a United States territory"). In this connection it is important to note that Section 7310(a)'s reference to shipyards "outside of the United States or Guam" shows that the term "United States" does not include Guam for purposes of the statute. Also, under COMSC Instruction 4700.15A, ¶ 4.b., "ships deployed overseas which do not regularly return to the United States (i.e., remain overseas for periods exceeding 2 years) shall be considered homeported overseas." As plaintiff acknowledges, "the SS PETERSBURG has been prepositioned for the last three years in the U.S. Territory of Guam at the Delta-Echo Pier in Apra Harbor, approximately 300 yards from the Guam Shipyard." *See* Pl. Mem. at p. 5. Thus, for purposes of the COMSC Instruction, the SS PETERSBURG would not in any event be deemed a vessel "the homeport of which is in the United States," a precondition to applicability of Section 7310(a).

In addition, COMSC Instruction 4700.15A, ¶ 4.a., defines "voyage repairs," which are expressly excluded from the scope of Section 7310(a), to include "[c]orrective maintenance on mission or safety essential items necessary for a ship to deploy, or to continue on its deployment or comply with regulatory requirements" and "scheduled maintenance" that is "absolutely necessary to ensure machinery and equipment operational reliability." The repairs that are being performed on SS PETERSBURG in Singapore fall within this definition, and so would not be subject to Section 7310(a) even if the ship were deemed both to be under the jurisdiction of the Secretary of the Navy and homeported in the United States. *See* Cahill Dec., ¶ 8.

<u>Third</u>, plaintiff's reliance on the Memorandum of Agreement between the Department of Defense and MARAD and the terms of MARAD's ship management contracts is without merit. The Memorandum of Agreement, *see* Pl. Mem. at p. 7, expressly excludes "necessary voyage repairs while overseas," such as are being performed on the SS PETERSBURG, and is made subject to Section 7310(a), which is not applicable here for the reasons set forth above. The provision in the ship management contract cited by plaintiff, *see* Pl. Mem. at p. 8, has been superseded and is no longer in effect. The applicable version of the ship management agreement permits the work at issue to be performed in a foreign shipyard. *See* Cahill Dec., ¶ 6. Thus, plaintiff's claim "that it is likely to succeed on the merits because the U.S. Government and its agents have violated their own mandates and required procedures," *see* Pl. Mem. at p. 16, is false.

-12-

### B.    <u>Irreparable Injury</u>

Plaintiff also fails to demonstrate that it will suffer irreparable harm if an injunction is not issued.  In this regard, any alleged injury that purportedly will result "must be both certain and great; it must be actual and not theoretical."  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  The moving party must show that "[t]he injury complained of [is] of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Id.* (internal quote omitted).

Plaintiff contends that if the SS PETERSBURG is repaired in Singapore, "the result will be a loss of $14,000,000 in revenues to Guam Shipyard, as well as the forced layoff for a significant time period of the majority of the shipyard's regular work force of two hundred fifty (250) United States citizens."  *See* Pl. Mem. at pp. 9-10.  This contention, however, is entirely speculative because it is predicated on the assumption that if the contract for the repair work is not awarded to the Singapore shipyard, that contract will be awarded to plaintiff.  Plaintiff has offered no proof to support this assumption.  Furthermore, plaintiff acknowledges that there are "other similarly situated private U.S. shipyards" that may be available to bid for and perform the repair work at issue.  *See* Pl. Opp. at p. 11.  Consequently, there is no guarantee that plaintiff would receive the work at issue even if it were to prevail in this action.  For this reason, the injury alleged by plaintiff is insufficient to support the issuance of a temporary restraining order.

-13-

C.     **Harm to Other Parties**

Contrary to plaintiff's assertions, other parties and the public will sustain substantial harm if the Court issues a temporary restraining order. *See* Cahill Dec., ¶¶5, 9, 12-13; Declaration of Michael F. Souza [attached hereto as Exhibit 3]; Declaration of LCDR Tony V. Giles, USN [attached hereto as Exhibit 4]. These substantial and concrete injuries make the balance of harms tip decidedly against the interim injunctive relief requested by plaintiff.

D.     **The Public Interest**

As demonstrated by the attached declarations, the strong public interest in military preparedness, especially in a time of war, weighs heavily against issuance of a temporary restraining order.

**Conclusion**

Based on the foregoing, defendants respectfully request that plaintiff's motion for a temporary restraining order be denied.[2]  A proposed Order is attached.

---

[2] Fed. R. Civ. P. 65(c) provides that "no restraining order . . . shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred by any party who is found to have been wrongfully . . . restrained. If, notwithstanding defendants' arguments, the Court decides to grant plaintiff's motion, defendant requests that the Court require plaintiff to post a bond in the amount of at least $20,000 per day for each day of the temporary restraining order's term. *See* Cahill Dec., ¶ 12.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney


_____
R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney


_____
DANIEL F. VAN HORN
D.C. Bar No. 924092
KATHLEEN M. KONOPKA
Assistant United States Attorneys


OF COUNSEL:

JANIS RODRIGUEZ, Esq.
Federal Maritime Administration

CHARNA SWEDARSKY, Esq.
Department of the Navy

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ )
                                        )
GUAM INDUSTRIAL SERVICES, INC.,         )
d/b/a Guam Shipyard,                    )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )        Civil Action No. 05-1599 (RMU)
                                        )
DONALD H. RUMSFELD, Secretary of        )
Defense, et al.,                        )
                                        )
        Defendants.                     )
_____ )


**ORDER**

UPON CONSIDERATION of plaintiff's motion for a temporary restraining order,

the memoranda submitted in support of and opposition to that motion, applicable legal

authorities, and the entire record herein it is, on this _____ day of August, 2005,

        ORDERED, that the motion should be, and hereby is, DENIED.


                                _____
                                UNITED STATES DISTRICT JUDGE