UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUAM INDUSTRIAL SERVICES, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action 05-01599 (RMU) |
| ) | |
| ) | |
| RUMSFELD ET. AL, ) | |
| ) | |
| Defendants. ) | |
| ) | |

DECLARATION OF MICHAEL F. SOUZA

1. I, Michael F. Souza, hereby declare the following in response to Guam Industrial Services, Inc.'s (GIS) suit for temporary restraining order, injunctive relief and declaratory judgment. I am employed by the Military Sealift Command ("MSC"), United States Department of the Navy, which is responsible for providing ocean transportation of dry and liquid bulk cargo, sealift readiness and support services to Department of Defense ("DOD") components.

2. I am a Mechanical Engineer in the MSC Prepositioning Program Office. In my current position I have responsibility and oversight for the Offshore Petroleum Discharge System ("OPDS") vessels, SS PETERSBURG and SS CHESAPEAKE, owned and operated by the U.S. Maritime Administration ("MARAD"), Department of Transportation. These vessels are currently forward deployed in support of Department of Defense Contingency Operational Plans. The SS PETERSBURG is activated as part of Maritime Prepositioned Ship Squadron Three, Western Pacific Ocean, and the

SS CHESAPEAKE is activated as part of Maritime Prepositioned Ship Squadron Two, Diego Garcia. Both vessels are under the operational control of MSC. In my position I am responsible, among other things, to coordinate the maintenance and repair requirements of the OPDS vessels SS PETERSBURG and SS CHESAPEAKE with the cognizant personnel at MARAD, the fuel supplier and vessel sponsor Defense Energy Support Center ("DESC"), and the military operational commander, DOD's Pacific Command ("PACOM").

3. Since 1996 I have been directly involved with the maintenance, repair, construction and conversion of multiple ship classes within the Prepositioning Program. This includes the oversight and management of regulatory body compliance, overhaul management and budget execution on five Maritime Prepositioning Squadron ("MPS") vessels, and management of the conversion of three MPS – Enhancements vessels. I am also the Project Engineer responsible for the design, construction, delivery and testing of the new commercial built OPDS vessel. I received a Bachelors of Science, Marine Engineering from Massachusetts Maritime Academy in 1985, and a Masters of Science, Engineering Management from George Washington University in 1997. I have worked extensively and exclusively for the last 20 years in the marine and naval industries.

4. The procurement of the shipyard overhaul period for the SS PETERSBURG was not the responsibility of MSC. It was MSC's sole responsibility to coordinate with PACOM exactly when the SS PETERSBURG would depart the Prepositioning site for the shipyard. MARAD approached MSC during the overhaul bid evaluations, prior to award of the contract, to inquire if a two week delay in the start of the overhaul was acceptable to PACOM and DESC. It is my understanding the there was a significant cost

savings if the start was so delayed. All parties involved agreed that a two-week delay in the start, and consequently a two-week delay in the return of the SS PETERSBURG on station, was acceptable.

5. The shipyard overhaul time frame was driven by United States Coast Guard Certificate of Inspection (COI) requirements and American Bureau of Shipping Shaft and Special Survey requirements. The COI expired on August 5, 2005, the Shaft survey is scheduled to expire at the end of August and the Special Survey will expire in September 2005. Without these inspections completed, the vessel will not be in compliance with Coast Guard regulations, will not be allowed to sail and will be unable to meet its mission.

6. The SS PETERSBURG is one of three Off-shore Petroleum Discharge System ("OPDS") tankers. The OPDS was developed to deliver 1.2 Million gallons per day of fuel from 4 miles off shore to a unique military mobile fuel terminal, when and where standard port facilities are unavailable. The system is designed to deploy across a beach, in weather conditions of up to six foot waves and 30 knots of wind, and begin delivering fuel in less than 24 hours. There are two of these special tankers, the SS PETERSBURG and SS CHESAPEAKE, which are forward deployed in support of Department of Defense contingency operations plans (DOD Operational Plan). The third ship, SS POTOMAC, is in long-term lay up in Houston, Texas. While these vessels are tankers, their primary mission is to deploy their OPDS. The OPDS includes 4 miles of submersible hose and associated reel assemblies, a special four point mooring system, a specially designed 820 ton submersible mooring barge and its launching system, a series of high pressure booster pumps, and six 40 ton work boats and a crane to launch the

boats. SS PETERSBURG and SS CHESAPEAKE each carry approximately 300,000 barrels (12.6 million gallons) of jet fuel. The SS POTOMAC is considerably smaller than the other two vessels. It carries only 180,000 barrels (7.6 million gallons) of fuel, and does not have deck space for the full complement of six work boats. As a result, the SS POTOMAC does not meet the requirements, and cannot perform the mission of the DOD Operational Plan. Therefore, the SS POTOMAC is not capable of serving as a direct replacement vessel for the SS PETERSBURG. These vessels were all specially modified to support DOD's contingency fuel distribution mission, and are outfitted with equipment and systems manufactured to U.S. government specifications. There is currently no civilian/commercial equivalent vessel which can accomplish this mission. The government has contracted for a OPDS vessel to replace the SS PETERSBURG and SS CHESAPEAKE, but it is not scheduled for delivery until March of 2007.

I hereby declare, pursuant to 28 U.S.C.A. 1746 under penalty of perjury that the above declaration is true and correct to the best of my knowledge.

MICHAEL F. SOUZA

Dated: August 23, 2005

4