## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>GUAM INDUSTRIAL SERVICES, INC., )<br>d/b/a Guam Shipyard, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>DONALD H. RUMSFELD, Secretary of )<br>Defense, et al., )<br> )<br>Defendants. )<br>_____ ) | Civil Action No. 05-1599 (RMU) |

### DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendants, by their undersigned attorneys, hereby move to dismiss plaintiff's complaint in the above-captioned civil action, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief can be granted. In the alternative, defendants move, pursuant to Fed. R. Civ. P. 56(b), that the Court enter summary judgment in their favor because there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law. Defendants additionally move to dismiss this case pursuant to Fed. R. Civ. P. 19(b) for failure to join indispensable parties to the extent plaintiff is seeking to nullify the contract for the repairs currently being performed on the SS PETERSBURG in Singapore.

-1-

The grounds for this motion are more fully described in the accompanying memorandum of points and authorities.  A statement of material facts as to which defendants contend there is no genuine issue and a proposed Order are also being submitted herewith.

LCvR 7(m) is inapplicable because this a dispositive motion.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney

_____

R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney

_____

DANIEL F. VAN HORN
D.C. Bar No. 924092
Assistant United States Attorney

_____

KATHLEEN M. KONOPKA
Assistant United States Attorney

United States Attorney's Office
Civil Division, Room E-4816
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7168
daniel.vanhorn@usdoj.gov

OF COUNSEL:

JANIS RODRIGUEZ, Esq.
Maritime Administration
U.S. Department of Transportation

ALAN W. MENDELSOHN, Esq.
CHARNA SWEDARSKY, Esq.
Department of the Navy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                              )
GUAM INDUSTRIAL SERVICES, INC.,               )
d/b/a Guam Shipyard,                          )
                                              )
    Plaintiff,                                )
                                              )
          v.                          )    Civil Action No. 05-1599 (RMU)
                                              )
DONALD H. RUMSFELD, Secretary of             )
Defense, et al.,                              )
                                              )
    Defendants.                               )
———————————————————— )

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
### OR FOR SUMMARY JUDGMENT

Defendants, by their undersigned attorneys and pursuant to LCvR 7(a), hereby

respectfully submit the following memorandum of points and authorities in support of

their motion to dismiss plaintiff's complaint or, in the alternative, for summary judgment

in the above-captioned civil action.

### <u>Background</u>

Plaintiff is a corporation owned by United States citizens which owns and operates

Guam Shipyard, a commercial shipyard located in the Territory of Guam.  *See* Plaintiff's

Complaint filed August 10, 2005 (hereafter cited as "Compl."), ¶¶ 1-2 at p. 2.  Plaintiff

seeks declaratory and injunctive relief "to prohibit the United States Government, acting

through the Department of Defense, the United States Navy, and the Department of Transportation's Maritime Administration ("MARAD") "from continuing to solicit bids and/or award contracts to foreign shipyards in connection with non-voyage repairs of naval vessels homeported in the United States, in violation of 10 U.S.C. § 7310(a) ('Section 7310(a)')." *Id.* at p. 2.

This case grows out of a Request for Price ("RFP") that was issued on June 21, 2005, by Interocean American Shipping Corporation ("IASC"), a private corporation with its principal headquarters in Voorhees, New Jersey, for certain drydock repairs to the SS PETERSBURG. *See* Compl., ¶ 19 at p. 5. IASC solicited proposals for those repairs pursuant to a Ship Manager Contract that has been entered into between IASC and MARAD, pursuant to 50 App. U.S.C.A. § 1744(c)(2), for the management of the SS PETERSBURG. *See* Compl., ¶ 20 at p. 5. *See also* News Release MARAD 13-05, *U.S. Maritime Administration Ushers In New Contracts to Run Ready Reserve Force*, July 28, 2005, http://www.dot.gov/affairs/marad1305.htm.

The SS PETERSBURG is part of the Ready Reserve Force, a component of the National Defense Reserve Fleet, which is maintained by the Secretary of Transportation pursuant to 50 App. U.S.C.A. § 1744. *See* Compl., ¶ 12 at p. 4. The SS PETERSBURG has been activated for duty under the Military Sealift Command's Prepositioning Program. *See id.*, ¶ 13, at p. 4. *See also* http://www.msc.navy.mil/PM3/.

Plaintiff submitted a proposal in response to IASC's RFP. *See* Compl., ¶ 21 at p. 5. After learning that IASC had rejected its proposal, plaintiff filed this civil action on

August 10, 2005.  *See id.*, ¶ 23 at p. 5.  In particular, plaintiff alleged in its Complaint

that IASC had "awarded the drydocking repair contract for the SS Petersburg to a

shipyard [in] Singapore," *id.*, and that "the SS PETERSBURG was scheduled to depart

for Singapore on or about August 7, 2005, for said repairs," *id.*, ¶ 24 at p. 5.

On August 19, 2005, plaintiff filed a motion for a preliminary injunction.  Then, on

August 23, 2005, after being advised by defendants that SS PETERSBURG had arrived

in Singapore and that repairs to the ship had begun, plaintiff moved for a temporary

restraining order.  The Court denied plaintiff's motion for a temporary restraining order,

following highly expedited briefing, on August 24, 2005.  *See* Memorandum Opinion

Denying the Plaintiff's Motion for a Temporary Restraining Order, filed August 24, 2005

(hereafter cited as "TRO Opinion").  Plaintiff's motion for a preliminary injunction

remains pending before the Court.[1]

Because plaintiff's motion for a temporary restraining order was directed solely to

the repair work currently being performed on the SS PETERSBURG, the scope of that

motion was narrower than plaintiff's Complaint, which appears to extend generally to

vessels under the jurisdiction of the Secretary of the Navy.  The precise dimensions of the

---

[1] Fed. R. Civ. P. 65(a)(2) permits the Court to consolidate the preliminary
injunction motion with a final decision on the merits.  In that event, the Court may treat
plaintiff's preliminary injunction motion as a motion for summary judgment.  *See, e.g.,
TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69, 71 (D.D.C. 2003), *aff'd*, 354 F.3d 877
(D.C. Cir. 2004).  Even if this consolidation is not ordered, materials submitted with
respect to the preliminary injunction motion become part of the record for purposes of
summary judgment.  *See* Fed. R. Civ. P. 65(a)(2).

relief requested by plaintiff, however,  are somewhat unclear  because, in both its

Complaint and its moving papers, plaintiff seemingly makes no distinction between

"naval vessels" and "other vessels under the jurisdiction of the Secretary of the Navy."

By contrast, the statute plaintiff invokes, 10 U.S.C.A. § 7310(a), draws an unmistakable

distinction between those two different categories of vessels.  *See* Declaration of Captain

James Driscoll, U.S. Navy (hereafter cited as "Driscoll Dec.") [copy attached as Exhibit

1], ¶¶ 9-10 at p. 3.

Section 7310(a) by its own terms is applicable to "[a] naval vessel (or any other

vessel under the jurisdiction of the Secretary of the Navy)."  If, as plaintiff apparently

believes, any vessel under the jurisdiction of the Secretary of the Navy is "a naval vessel"

for purposes of the statute, the parenthetical language would be meaningless surplusage.

The Court has previously rejected an approach to statutory construction that would

"ignore the disjunctive 'or' and rob the term . . . of its independent and ordinary

significance."  *See* TRO Opinion at pp. 6-7 (quoting *Reiter v. Sonotone Corp.*, 442 U.S.

330, 338-39 (1979)).  Indeed, there is simply no way to ignore the disjunctive "or" that

precedes the term "any other vessel under the jurisdiction of the Secretary of the Navy"

without directly contradicting *Reiter*, and such an interpretation would be nonsensical.

Except for the various scattered references to "naval vessels," nothing in

plaintiff's Complaint or moving papers indicates that plaintiff is challenging, in this civil

action, the use of foreign shipyards to repair "naval vessels" defined as "those categories

of vessels and service craft, owned and operated by the Navy listed in U.S. Navy

-4-

Regulation § 406." *See* Driscoll Dec., ¶ 9 at p. 3.  Consequently, defendants interpret

plaintiff's claims as involving "vessels under the jurisdiction of the Secretary of the

Navy" other than "naval vessels," as those terms are used in Section § 7310(a).[2]  More

particularly, because the relief sought in both the Complaint and in plaintiff's motion for

a preliminary injunction appears to be focused on vessels, such as the SS PETERSBURG,

that are part of the Ready Reserve Force, defendants understand the critical issue on the

merits of plaintiff's claims in this case to be whether Ready Reserve Force vessels are

"under the jurisdiction of the Secretary of the Navy" for purposes of Section 7310(a).  *See*

Compl., ¶ 26 at p. 6 (referencing on-going practice of "awarding repair contracts for RRF

ships to foreign shipyards"); Plaintiff's Memorandum in support of its Motion for a

Preliminary Injunction (hereafter cited as "Pl. Mem.") at pp. 12-13 ("[t]he crux of this

case is that Defendants have and continue to solicit bids and/or award contracts to foreign

shipyards in connection with non-voyage repairs to all RRF ships, or at a minimum, to all

RRF ships activated for duty with the Navy's Prepositioning Program").

---

[2] In 2003, plaintiff brought a civil action, which has been resolved adversely to plaintiff by a final judgment, in the United States Court of Federal Claims challenging the participation of foreign shipyards in a competition for overhaul and repair services for a naval vessel.  *See* Order filed June 9, 2003 in *Guam Industrial Services, Inc. v. United States*, Case No. 03-706C (Ct. Fed. Cl.) [copy attached as Exhibit 2].  Thus, to the extent plaintiff might be seeking to challenge before this Court the use of foreign shipyards to perform repairs on vessels that are owned and operated by the Navy, plaintiff's action would be barred by the doctrine of res judicata because any claims of that sort either were or could have been litigated in plaintiff's 2003 case in the Court of Federal Claims.  *See Johnson v. Ashcroft*, Civil Action No. 02-1745 (RMU), 2005 WL 2064095, *3 (D.D.C. August 25, 2005) (legal standard for res judicata).

## Legal Standards

Defendants have moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted or, in the alternative, for summary judgment pursuant to Fed. Civ. P. 56.  In addition, defendants have moved to dismiss this case under Fed. R. Civ. P. 19 for failure to join indispensable parties to the extent plaintiff's claims involve the contract between IASC and the Singapore shipyard for the repairs currently being performed on the SS PETERSBURG.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  *See Sullivan-Obst v. Powell*, 300 F. Supp. 2d 85, 91 (D.D.C. 2004).  A complaint may be dismissed for failure to state a claim if it is beyond doubt that plaintiff can prove no set of facts in support of its claim that would entitle plaintiff to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003).  Thus, in resolving a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations -- including mixed questions of law and fact -- as true and draw all reasonable inferences therefrom in the plaintiff's favor.  *See, e.g., Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1149 (2004); *Holy Land Foundation v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1218 (2004).  On the other hand, the Court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *See, e.g., Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 1993).

Rule 12 provides that if "matters outside the pleadings are presented to and not excluded by the court the [Rule 12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Therefore, when materials outside the complaint are considered, the proper course of action is to convert the motion to dismiss into a motion for summary judgment.  *See Air Line Pilots Ass'n v. PBGC*, 193 F. Supp. 2d 209, 215 (D.D.C. 2002), *aff'd*, 334 F.3d 93 (D.C. Cir. 2003).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," the Court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.  Matters of law are particularly appropriate for resolution by summary judgment.  *See Douglass v. First Nat'l Realty Corp.*, 437 F.2d 666, 669 (D.C. Cir. 1970).

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on the motion, the moving party must show that the nonmoving party "fail[ed] to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment." *Id.*

Factual assertions contained in affidavits and other evidence submitted in support of a motion for summary judgment may be accepted as true unless controverted by the nonmoving party with competent evidence. *See* Fed. R. Civ. P. 56(e). The nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the nonmoving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

<u>**Argument**</u>

**1.    Plaintiff has Failed to Join Indispensable Parties.**

To the extent that plaintiff is seeking to enjoin performance of the contract for the repairs to SS PETERSBURG that are currently in progress, plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 19(b) because plaintiff has failed to join indispensable parties. The repair contract for SS PETERSBURG is between IASC and the shipyard in Singapore, neither of which has been made a party to this action. *See* Compl., ¶¶ 19-23 at p. 5.

Furthermore, contrary to plaintiff's claims, *see, e.g.* Compl. ¶¶ 20 at p. 5 & 25 at p. 6, MARAD's ship managers, including IASC, acquire maintenance services through approved commercial subcontracting methods, not as "agents" of the government.  *See* Declaration of  William H. Cahill dated September 6, 2005 (hereafter cited as "Second Cahill Dec.") [copy attached as Exhibit 3], ¶ 10 at pp. 10-11.[3]  Indeed, MARAD's Ship Manager Contract expressly provides that "[t]he Ship Manager is not an agent of the United States under the Contract Disputes Act and nothing contained herein shall be deemed to extend to the Ship Manager the status of 'agent of the United States' under any laws relating to contracts." *See* MARAD Ship Manager Contract, Section G.7.1.1.1, Amendment 0013.[4]  Moreover, the Comptroller General of the United States has ruled that a contract for ship repair services analogous to the one at issue here involved a procurement that was not conducted "by a Federal Agency," and so was not within the Comptroller General's jurisdiction under the Competition in Contracting Act, 31 U.S.C.A. § 3551(1)(A).  *See Guam Industrial Services, Inc. d/b/a Guam Shipyard*, File No. B-281381 (Comp. Gen. November 10, 1998) [copy attached as Exhibit 4].  In short, the contract for the current repairs to SS PETERSBURG is between two private commercial entities, and cannot be deemed a "government contract."

---

[3] Mr. Cahill's first declaration was submitted with defendants' opposition to plaintiff's motion for a temporary restraining order.

[4] A complete copy of MARAD's current Ship Manager Contract is available on the internet at https://voa.marad.dot.gov/programs/ship_manager/final.asp.

The Court of Appeals has recognized that "[n]umerous cases hold that an action seeking rescission of a contract must be dismissed unless all parties to the contract, and others having a substantial interest in it, can be joined." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) (internal quote omitted; citing authorities), *cert. denied*, 467 U.S. 1210 (1984); *see Kickappo Tribe v. Babbitt*, 43 F.3d 1491, 1495-96 (D.C. Cir. 1995).  In accordance with this rule, plaintiff's failure to join the parties to the repair contract for SS PETERSBURG necessitates the dismissal of plaintiff's action insofar as plaintiff seeks to nullify that contract.

### 2.     Ready Reserve Force Vessels are Not Subject to 10 U.S.C.A. § 7310(a).

10 U.S.C.A. § 7310(a) provides as follows:

> **Vessels with homeport in the United States.** -- A naval vessel (or any other vessel under the jurisdiction of the Secretary of the Navy) the homeport of which is in the United States may not be overhauled, repaired, or maintained in a shipyard outside the United States or Guam, other than in the case of voyage repairs.

The applicable agency interpretation of Section § 7310(a) is contained in Commander Military Sealift Command Instruction 4700.15A, *Accomplishing Ship Repair in Foreign Ship Yards* (dated 2 February 2000) (hereafter cited as "COMSCINST 4700.15A"), www.msc.navy.mil/instructions/pdf/m470015a.pdf [copy attached as Exhibit 5].  COMSCINST 4700.15A sets forth a number of definitions applicable to 10 U.S.C.A. § 7310(a) for purposes of determining compliance with the statute.  These definitions include "vessel under the jurisdiction of the Secretary of the Navy," "homeport," and "voyage repairs."  Most significantly for purposes of the instant case, the instruction

expressly provides that "MARAD's Ready Reserve Force (RRF) vessels," such as SS

PETERSBURG, "are not considered to be under the jurisdiction of the Secretary of the

Navy and therefore are not required to comply with the provisions of Title 10 U.S. Code,

Section 7310(a)." *See* COMSCINST 4700.15A, ¶ 4.d.[5]

    As plaintiff has acknowledged, "[c]ourts review an agency's interpretation of [a]

statute under the well known and established *Chevron* standard." *See* Pl. Mem. at p. 14

(citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837

(1984)). The first step under *Chevron* is to inquire "whether Congress has directly

spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. As explained by the

Court of Appeals, "if Congress has directly spoken that is the end of the matter and we

must give effect to the unambiguously expressed intent of Congress." *Public Citizen v.*

*HHS*, 332 F.3d 654, 59 (D.C. Cir. 2003) (internal quote omitted). "If, however, the

statute is silent or ambiguous with respect to the specific issue, we must move to the

---

[5] Even if the Ready Reserve Force vessels were under the jurisdiction of the Secretary of the Navy -- which they are not -- 10 U.S.C.A. 7310(a) would still be inapplicable to the current repairs to the SS PETERSBURG, for two reasons. First, the statute would not apply because the "homeport" of the SS PETERSBURG would be deemed to be outside the United States pursuant to Paragraph 4.b of COMSCINST 4700.15A. *See* TRO Opinion at pp. 5-11. Second, Paragraph 4.a of COMSCINST 4700.15A defines "voyage repairs," which are expressly excluded from the scope of Section 7310(a), to include "[c]orrective maintenance on mission or safety essential items necessary for a ship to deploy, or to continue on its deployment or comply with regulatory requirements" and "scheduled maintenance" that is "absolutely necessary to ensure machinery and equipment operational reliability." The repairs that are being performed on SS PETERSBURG in Singapore fall within this definition, and so would not be subject to Section 7310(a) in any event. *See* Second Cahill Dec., ¶ 11, at pp. 5-6.

second step and must defer to the agency's interpretation as long as it is based on a

permissible construction of the statute." *Id.* (internal quote omitted).

In *United States v. Mead Corp.*, 533 U.S. 218 (2001), the Supreme Court

explained that an agency interpretation is eligible for deference

> when it appears that Congress delegated authority to the agency generally to
> make rules carrying the force of law, and that the agency interpretation
> claiming deference was promulgated in the exercise of that authority.
> Delegation of such authority may be shown in a variety of ways, as by an
> agency's power to engage in adjudication or notice-and-comment
> rulemaking, or by some other indication of a comparable congressional
> intent.

*Id.* at 226-27.  The Court, quoting *Chevron*, then reiterated that if Congress "left a gap for

an agency to fill, there is an express delegation of authority to the agency to elucidate a

specific provision of the statute by regulation," and therefore, "any ensuing regulation is

binding in the courts unless procedurally defective, arbitrary or capricious in substance, or

manifestly contrary to the statute."  *Id.* at 227 (quoting *Chevron*, 467 U.S. at 843-44).

Although most cases qualifying for *Chevron* deference have involved notice-and-

comment rulemaking or formal adjudication, the absence of such procedures is not

dispositive, and the Supreme Court has given *Chevron* deference to agency interpretations

"even when no administrative formality was required and none was afforded."  *Id.* (citing

*NationsBank v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256-57 (1995); *see*

*Barnhardt v. Walton*, 535 U.S. 212, 221 (2002) ("the fact that the Agency previously

reached its interpretation through means less formal than 'notice and comment'

rulemaking . . . does not automatically deprive that interpretation of the judicial deference otherwise due"); *Edelman v. Lynchburg College*, 535 U.S. 106, 114 (2002) (same).

Section 7310(a) is silent with regard to the meaning of the term "vessel under the jurisdiction of the Secretary of the Navy," thereby leaving "a gap for an agency to fill." *Mead Corp.*, 533 U.S. at 227. Therefore, the Court must look to the agency interpretation and determine whether that interpretation was duly adopted and is reasonable. *Id.* at 226-27; *see Chevron*, 467 U.S. at 845. This analysis demonstrates that the Navy's interpretation of the term is reasonable, and so is entitled to *Chevron* deference.

First, COMSCINST 4700.15A was promulgated in accordance with a number of statutes that address the authority of the Navy to prescribe its own regulations. Under 5 U.S.C.A. § 301, "the head of an Executive department or military department may prescribe regulations for the government of his department." Specific to the Navy, 10 U.S.C.A. § 5013(g) provides that the Secretary of the Navy may "prescribe regulations to carry out his functions, powers, and duties under this title." The "powers" and "duties" under 10 U.S.C.A. § 5013 include, *inter alia*, "the functioning and efficiency of the Department of the Navy," "the formulation of policies and programs by the Department of the Navy," and "the effective and timely implementation of policy, program, and budget decisions and instructions of the President of the Secretary of Defense relating to the functions of the Department of the Navy." *See* 10 U.S.C.A. § 5013(c). As the Court has previously recognized, the foregoing statutory provisions give the Secretary of the Navy "the requisite delegated authority to make rules carrying the force of law." *See*

-13-

TRO Opinion at p. 9 (quoting *Mead Corp.*, 533 U.S. at 226-27; internal quotation omitted).

Second, the Navy's interpretation of the term "vessel under the jurisdiction of the Secretary of the Navy" is reasonable. In this connection, it should be noted that 10 U.S.C.A. § 7310(a) deals with the overhaul, repair, and maintenance of naval vessels and other vessels under the jurisdiction of the Secretary of the Navy. By statute, however, the maintenance of vessels in the National Defense Reserve Fleet, including vessels assigned to the Ready Reserve Force, is the responsibility of the Secretary of Transportation. *See* 50 App. U.S.C.A. § 1744 (a) ("[t]he Secretary of Transportation shall maintain a National Defense Reserve Fleet, including any vessel assigned to the Ready Reserve component of the fleet"). For purposes of a statute dealing with vessel "maintenance" such as Section 7310(a), it is logical and reasonable for the Secretary of the Navy to define his jurisdiction so as to conform to Congress's assignment of responsibility to "maintain" the vessels in question.[6]

---

[6] Paragraph 4.d of COMSCINST 4700.15A defines "vessel under the jurisdiction of the Secretary of the Navy" to exclude, in addition to Ready Reserve Force vessels, "MSC time chartered ships . . . and voyage chartered ships." As with Ready Reserve Force vessels, the Navy is not responsible for the repair and maintenance of those excluded vessels. In 1993, the General Accounting Office determined that the Navy's position "that time-chartered ships remain under the jurisdiction of their owners, and are therefore allowed to be repaired overseas, appears reasonable." *See* GAO Report, *Navy Contracting: Military Sealift Command's Control Over Time-Chartered Ships* (GAO/NSIAD-93-140), B-252298, at p. 4 (April 7, 1993) [copy attached as Exhibit 6]. The Navy's responsibility for voyage chartered ships is even more attenuated because, as the term implies, a "voyage charter" is a contract for the services of a vessel to carry a full cargo on a single voyage. *See* Gilmore & Black, ADMIRALTY LAW, § 4-1 at p. 193 (2d

-14-

Plaintiff has argued that 10 U.S.C.A. § 7310(a) should apply to Ready Reserve Force vessels because "jurisdiction need not be exclusive -- i.e. DoD/naval jurisdiction does not preclude DOT jurisdiction." *See* Pl. Mem. at p. 13. In other words, plaintiff contends that if the Secretary of the Navy has jurisdiction over a vessel for any purpose, the Secretary should then be deemed to have jurisdiction over that vessel for purposes of maintenance and repair. Neither the statute nor logic supports this expansive reading of Section 7310(a)'s scope. Moreover, once a Ready Reserve Force vessel is activated to provide service to the Department of Defense, the vessel is under the control of a Combatant Commander who does not report to and is not under the supervision of the Secretary of the Navy. *See* Driscoll Dec., ¶ 7 at pp. 2-3. Thus, contrary to the assumption that underlies plaintiff's Complaint, the Secretary of the Navy has neither operational control over nor responsibility for the repair and maintenance of Ready Reserve Force vessels even after those vessels have been activated for duty. *See id.*, ¶ 9 at p. 3. For these reasons, plaintiff's contention that Ready Reserve Force vessels are "under the jurisdiction of the Secretary of the Navy" for purposes of Section 7310(a) has no merit.

In short, the agency interpretation of the statutory term "vessel under the jurisdiction of the Secretary of the Navy" is not "procedurally defective, arbitrary or capricious in substance, or manifestly contrary to statute." *See* TRO Opinion at p. 9

---

ed. 1975); Schoenbaum, ADMIRALTY AND MARITIME LAW, § II-1 at p. 2 & § II-4 at p. 9 (4th ed. 2001). Nothing in plaintiff's Complaint or in plaintiff's moving papers suggests that the instant case involves repairs to either time chartered or voyage chartered ships.

(quoting *Mead Corp.*, 533 U.S. at 227; internal quotation omitted).  As such, that

interpretation is binding in the courts.  *See id.*

###    3.    Neither the DoD/DOT Memorandum of Agreement Nor the MARAD Ship Manager Contract Support Plaintiff's Claim.

Plaintiff also contends that making repairs to Ready Reserve Force vessels in

foreign shipyards is prohibited by an interagency agreement between the Department of

Defense and the Department of Transportation and by MARAD's Ship Manager Contract

for Ready Reserve Force vessels.  *See* Compl., ¶¶ 28-30, 34, 36-37 at pp. 6-8.

The interagency agreement on which plaintiff relies is between the U.S.

Transportation Command, on behalf of the Department of Defense ("DoD"), and

MARAD, on behalf of the Department of Transportation ("DOT").  *See* Memorandum of

Agreement between Department of Defense and Department of Transportation (hereafter

cited as "MOA"), dated 28 August 1997 [copy attached as Exhibit 7]. The Ship Manager

Contract is entered into by MARAD and entities such as IASC, pursuant to 50 App.

U.S.C.A. § 1744(c)(2), for the management of the vessels in the Ready Reserve Force.

*See* Compl., ¶¶ 19-20 at p. 5; Second Cahill Dec., ¶¶ 8-9 at pp. 3-4.

Plaintiff's reliance on the MOA and the MARAD Ship Manager Contract is

predicated on plaintiff's contention that "[d]efendants are bound by their own procedures

and contracts, and it [sic] is not free to disregard them." *See* Pl. Mem at p. 16.  This claim,

however, does not accurately reflect applicable law.  Even if one or both of those

documents could properly be construed to require all repair and maintenance work on

-16-

Ready Reserve Force vessels to be performed by domestic shipyards, the MOA and Ship Manager Contract would still be of no help to plaintiff because neither of those documents creates any rights that plaintiff may enforce.

The principle that "government agencies are bound to follow their own rules, even self-imposed procedural rules, that limit otherwise discretionary decisions" is known as the *Accardi* doctrine. *See Wilkinson v. Legal Services Corp.*, 27 F. Supp. 2d 32, 34 n.1 (D.D.C. 1998) (*citing United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954)). As the Court of Appeals for this Circuit has recognized, however, the Supreme Court "retreated from the broadest reading" of the *Accardi* doctrine in *Schweiker v. Hansen*, 450 U.S. 785, 789-90 (1981), where the Court "refused to bind the Secretary of Health and Human Services to the internal rules set forth in a 13-volume Social Security Administration handbook." *See Jackson v. Culinary School of Washington, Ltd.*, 27 F.3d 573, 584 n.21 (D.C. Cir. 1994), *vacated on other grounds*, 515 U.S. 1139 (1995), *reinstated in pertinent part*, 59 F.3d 254, 255 (D.C. Cir. 1995).

Another judge of this Court has explained the current state of the *Accardi* doctrine as follows:

> While it can hardly be gainsaid that public officials must obey the law, in the administrative context, a more nuanced question arises as to what constitutes "law" binding on the agencies. The question is not posed in its broadest, jurisprudential sense. Rather the question is to what sources must a court look to determine whether a government actor is prohibited from taking the action (or inaction) alleged to have been wrongfully done (or not done).

*Wilkinson*, 27 F. Supp. 2d at p. 34 (footnotes omitted); *see, e.g., BP Exploration & Oil, Inc. v. Dep't of Transportation*, 44 F. Supp. 2d 34, 37-38 (D.D.C. 1999). *See also, e.g., In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964, 974-76 (D.C. Cir.) (Department of Justice guidelines for issuing subpoenas to news media not binding), *cert. denied*, 125 S. Ct. 2977 (2005); *Nat'l Small Shipments Traffic Conference, Inc. v. ICC*, 725 F.2d 1442, 1449 (D.C. Cir. 1984) (rejecting application of *Accardi* doctrine where rule at issue "was not designed to protect either individual rights or wards of the federal government"); *Doe v. Hampton*, 566 F.2d 265, 280-81 (D.C. Cir. 1977) ("not every piece of paper emanating from a Department or Independent Agency is a regulation").

In this Circuit, "with regard to rules that have not been formally promulgated, the 'law' to which an agency will be bound are those rules to which it intended to be bound." *Wilkinson*, 27 F. Supp. 2d at 35 (footnote omitted); *accord, e.g., Jackson*, 27 F.3d at 584 ("[t]he touchstone for enforceability is agency intent"). Thus, in *Nat'l Latino Media Coalition v. FCC*, 816 F.2d 785, 788 n.2 (D.C. Cir. 1987), the Court of Appeals pointed out that "the 'binding' quality of a particular rule or statement will depend on whether the agency intended to establish a 'substantive' rule, one which is not merely interpretative but which creates or modifies rights that can be enforced against the agency." And, in *Vietnam Veterans v. Sec'y of the Navy*, 843 F.2d 528 (D.C. Cir. 1988), the Court of Appeals explained that "statements whose language, context and application suggest an intent to bind agency discretion and private party conduct -- the sort of statements requiring compliance with § 553 [of the Administrative Procedure Act] -- will have that

-18-

effect if valid; interpretative rules or policy statements will not, *regardless* of their validity." *Id.* at 537 (emphasis in original).

The nature and function of the MOA and the MARAD Ship Manager Contract demonstrate that those documents are not intended to provide plaintiff with any enforceable rights. The MOA and the Ship Manager Contract are not agency "procedures" or "regulations" as those terms are used for purposes of the *Accardi* doctrine. Rather, the documents are contracts: the MOA governs the relationship between DoD and DOT with respect to vessels in the National Defense Reserve Fleet, a component of which is the Ready Reserve Force; the Ship Manager Contract governs the relationship between MARAD and the entities that manage vessels in the Ready Reserve Force.

Unlike the regulations involved in cases such as those on which plaintiff has relied, *see* Pl. Mem. at p. 16, the MOA and the Ship Manager Contract are not intended to regulate defendants' conduct with respect to the plaintiff. Although contracts obviously create rights and responsibilities that inure to the respective contracting parties, plaintiff is not a party either to the MOA or to a Ship Manager Contract. And, as the Court has previously observed, plaintiff has cited no authority for "its standing to enforce the provisions of a contract to which it is not a party." *See* TRO Opinion at p. 12.

Therefore, plaintiff may not rely on the MOA or the MARAD Ship Manager Contract to support plaintiff's claims against defendants because plaintiff has no enforceable rights under either of those documents. Furthermore, neither the MOA nor

-19-

the Ship Manager Contract can in any event be read to require that all repair and maintenance work on Ready Reserve Force vessels, including the specific repairs currently being made to the SS PETERSBURG, be performed in a domestic shipyard.

The pertinent portion of the MOA provides as follows:

> All shipyard and ship repair facility work to [Ready Reserve Force] ships will be accomplished by MARAD (either directly or through is ship operating companies) and performed in the United States (except for necessary voyage repairs while overseas) in accordance with statue and DOT regulations.

MOA, Article 5, ¶ b at p. 3. This provision, by its own terms, does not apply to repairs such as those currently being made to SS PETERSBURG for two reasons.

First, the MOA requires repairs to be performed in the United States "in accordance with statute and DOT regulations." Plaintiff has cited no DOT regulations that would require use of a domestic shipyard for the current repairs to SS PETERSBURG, and, as shown above, the statute on which plaintiff relies, 10 U.S.C.A. § 7310(a), is not applicable here. Thus, plaintiff has identified no statute or regulation that would trigger application of the "buy America" provision of the MOA.

Second, that provision expressly excepts "necessary voyage repairs while overseas." As the TRO Opinion demonstrates, it is reasonable to deem the SS PETERSBURG to be deployed "overseas" because "the United States and Guam are distinct entities under 10 U.S.C. § 7310(a)." *See* TRO Opinion at p. 5.[7] Further, as noted

---

[7] *See also* 10 U.S.C.A. § 101(a)(1), which defines, for purposes of Title 10 United States Code, the term "United States" in a geographical sense, to mean only the States

above, the repairs that are currently being performed on SS PETERSBURG constitute

"voyage repairs" as defined by Paragraph 4.a of COMSCINST 4700.15A.  *See* Second

Cahill Dec., ¶ 11 at pp. 5-6.  Thus, repair work of that sort is exempt from the "buy

America" provision of the MOA even if the provision were otherwise applicable.

> Section C of the current MARAD Ship Manager Contract provides as follows:
>
> 2.4.6 Performance of Repair Work
> All repair work and/or upgrading work required in conjunction with the
> contract (including surveys and correction of sea trial deficiencies, or any
> other deficiencies that may be noted up to time of delivery and acceptance
> previously noted or not) necessary to meet all requirements of this contract
> shall be accomplished in a U.S. ship repair facility, unless the work is for
> emergency, or mission essential repairs, or **for pre-positioned ships which
> are deployed overseas, or for any vessel forward deployed outside of
> the United States**.

*See id.*, ¶ 9 at p. 4 (emphasis added to contract language).  The SS PETERSBURG is part

of the Ready Reserve Force, is currently activated for duty under the Prepositioning

Program, and is prepositioned in Guam.  *See* Compl., ¶¶ 13, 18 at pp. 4-5.  As

demonstrated in the TRO Opinion, it is reasonable to construe the exception in the Ship

Manager Contract for "pre-positioned ships which are deployed overseas" and vessels

"forward deployed outside of the United States" as being applicable to a ship, such as the

SS PETERSBURG, that is prepositioned in Guam.  *See* TRO Opinion at pp. 5-11.  Thus,

MARAD's Ship Manager Contract does not require that repairs to SS PETERSBURG or

---

and District of Columbia.  Guam, under 10 U.S.C.A. § 101(a)(2), is defined separately as
a "possession."

any similarly-situated vessels in the Ready Reserve Force be performed in a domestic shipyard.

## Conclusion

Based on the foregoing, defendants respectfully request that the Court dismiss plaintiff's complaint in its entirety or grant summary judgment in defendants' favor. A proposed Order is submitted herewith.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney

_____

R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney

_____

DANIEL F. VAN HORN
D.C. Bar No. 924092
Assistant United States Attorney

_____

KATHLEEN M. KONOPKA
Assistant United States Attorney

United States Attorney's Office
Civil Division, Room E-4816
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7168
daniel.vanhorn@usdoj.gov

OF COUNSEL:

JANIS RODRIGUEZ, Esq.
Maritime Administration
U.S. Department of Transportation

ALAN W. MENDELSOHN, Esq.
CHARNA SWEDARSKY, Esq.
Department of the Navy

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| GUAM INDUSTRIAL SERVICES, INC., ) | |
| d/b/a Guam Shipyard, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1599 (RMU) |
| ) | |
| DONALD H. RUMSFELD, Secretary of ) | |
| Defense, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Defendants, by their undersigned attorneys and pursuant to LCvR 7(h) & 56.1,

hereby respectfully submit the following statement of material facts as to which

defendants contend there is no genuine issue in the above-captioned civil action.

1.      10 U.S.C.A. § 7310(a) provides as follows:

**Vessels with homeport in the United States.** -- A naval vessel (or any
other vessel under the jurisdiction of the Secretary of the Navy) the
homeport of which is in the United States may not be overhauled, repaired,
or maintained in a shipyard outside the United States or Guam, other than in
the case of voyage repairs.

2.      The official agency interpretation of Section § 7310(a) is contained in

Commander Military Sealift Command Instruction 4700.15A, *Accomplishing Ship Repair*

-1-

*in Foreign Ship Yards* (dated 2 February 2000) [copy attached as Exhibit 5]. This document is publicly available at  www.msc.navy.mil/instructions/pdf/m470015a.pdf.

3.      The U.S. Transportation Command, on behalf of the Department of Defense ("DoD"), and the Maritime Administration ("MARAD"), on behalf of the Department of Transportation ("DOT") have entered into an interagency agreement "[t]o identify the relationship and responsibilities of the DoD and the DOT in the administration of the [National Defense Reserve Fleet] program." *See* <u>Memorandum of Agreement between Department of Defense and Department of Transportation</u>, dated 28 August 1997, ¶ 2 [copy attached as Exhibit 7].

4.      50 App. U.S.C.A. § 1744(a) provides as follows:

> The Secretary of Transportation shall maintain a National Defense Reserve Fleet, including any vessel assigned by the Secretary to the Ready Reserve Force component of the fleet, consisting of those vessels owned or acquired by the United States Government that the Secretary of Transportation, after consultation with the Secretary of the Navy, determines are of value for national defense purposes and that the Secretary of Transportation decides to place and maintain in the fleet.

5.      Pursuant to 50 App. U.S.C.A. § 1744(c)(2), the Secretary of Transportation, through MARAD, has entered into Ship Manager Contracts with private parties for the management of vessels in the Ready Reserve Force component of the National Defense Reserve Fleet. *See* Declaration of William H. Cahill dated September 6, 2005 ("Second Cahill Dec.) [copy attached as Exhibit 3], ¶¶ 8-9 at pp. 3-4. *See also* News Release MARAD 13-05, *U.S. Maritime Administration Ushers In New Contracts to Run Ready Reserve Force*, July 28, 2005, http://www.dot.gov/affairs/marad1305.htm. The current

MARAD Ship Manager Contract is publicly available at

https://voa/marad.dot.gov/programs/ship_manager/final.asp.

6.      The SS PETERSBURG is a government-owned tanker that is part of the
Ready Reserve Force.  *See* Plaintiff's Complaint ("Compl."), ¶ 12 at p. 4.  The SS
PETERSBURG has been activated for duty with the Military Sealift Command's
Prepositioning Program.  *See id.*, ¶ 13 at p. 4.  The SS PETERSBURG has been
prepositioned for the past three years in Guam.  *See* Declaration of Mathews Pothen
[attached to Plaintiff's Motion for a Preliminary Injunction], ¶ 4.

7.      On June 21, 2005, Interocean American Shipping Corporation ("IASC"), a
private corporation with its principal place of business in Voorhees, New Jersey, issued a
Request for Price ("RFP") in connection with drydock repairs needed with respect to the
SS PETERSBURG.  *See* Compl., ¶ 19 at p. 5.  IASC issued the RFP pursuant to IASC's
Ship Manager Contract with MARAD for the management of the SS PETERSBURG.
*See id.*, ¶ 20 at p. 5.

8.      Plaintiff, Guam Industrial Services d/b/a Guam Shipyard, submitted a
proposal in response to IASC's RFP.  *See id.*, ¶ 21 at p. 5.  IASC rejected plaintiff's
proposal, and awarded the drydocking repair contract for the SS PETERSBURG to a
shipyard in Singapore.  *See id.*, ¶ 23 at p. 5.

9.      The repairs covered by IASC's RFP are a required drydocking survey, a
special survey and a tailshaft survey as well as other necessary repairs.  These repairs are

necessary to comply with regulatory requirements and to ensure the readiness of the SS

PETERSBURG.  *See* Second Cahill Dec., ¶ 11 at p. 5.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney

_____

R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney

_____

DANIEL F. VAN HORN
D.C. Bar No. 924092
Assistant United States Attorney

_____

KATHLEEN M. KONOPKA
Assistant United States Attorney

United States Attorney's Office
Civil Division, Room E-4816
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7168
daniel.vanhorn@usdoj.gov

OF COUNSEL:

JANIS RODRIGUEZ, Esq.
Maritime Administration
U.S. Department of Transportation

ALAN W. MENDELSOHN, Esq.
CHARNA SWEDARSKY, Esq.
Department of the Navy