8/26/97

## MEMORANDUM OF AGREEMENT
## BETWEEN
## DEPARTMENT OF DEFENSE AND DEPARTMENT OF TRANSPORTATION

### 1. GENERAL

The Commander in Chief, U.S. Transportation Command (USCINCTRANS), on behalf of the Department of Defense (DoD), and the Maritime Administrator (Administrator), Maritime Administration (MARAD), on behalf of the Department of Transportation (DOT), agree that they have a mutual interest in the National Defense Reserve Fleet (NDRF), particularly the Ready Reserve Force (RRF) component of the fleet.

### 2. PURPOSE

To identify the relationship and responsibilities of the DoD and the DOT in the administration of the NDRF program, including: the acquisition, lay-up, berthing and maintenance of ships in the RRF; the conditions under which ships of the RRF will be activated for DoD operational control, operated, and subsequently deactivated; funding; and other aspects of the RRF program, including the NDRF sites. This Memorandum of Agreement (MOA) is consistent with the President's determination that commencing in Fiscal Year 1996, funding for the NDRF, including the RRF, will be provided through DoD appropriations, while management and control of the NDRF, including vessels of the RRF prior to and through their activation, rests with MARAD. Contract administration and contract control of vessels of the RRF remain a MARAD responsibility at all times, while operational control (OPCON) of activated vessels tendered to DoD will be exercised by the Commander, Military Sealift Command (COMSC).

### 3. COMPOSITION AND REQUIREMENTS OF THE RRF

   a. USCINCTRANS is responsible for developing the DoD's sealift requirements (except for Service-unique or theater-assigned requirements) annually and coordinating the overall DoD RRF requirements. These requirements will be based upon sealift requirements submitted to USCINCTRANS by the Combatant Commanders and Service Secretaries, and will include any special capability requirements. When sealift capability objectives are approved by the Secretary of Defense (SECDEF), USCINCTRANS will provide sealift requirements to the Administrator. MARAD will report on actions taken to meet those sealift requirements.

b. The following sources of vessels will be used to meet the requirements identified for the RRF: upgrades from the NDRF; turnovers of excess military auxiliaries; direct purchases from private owners; authorized construction and conversion programs; and sources otherwise authorized by law. Other RRF requirements such as specific vessel features, modifications, required outporting, readiness and timing for future changes in the RRF composition will be defined and coordinated by U.S. Transportation Command (USTRANSCOM) as described in the above paragraph in coordination with MARAD.

c. MARAD will effect installation of unique features and modifications to RRF ships, upon concurrence of such work by USTRANSCOM and funding by the sponsoring defense agency or Service.

d. RRF vessels are public vessels, and are documented as owned and operated by the United States of America, as represented by the Secretary of Transportation (SECTRANS), acting by and through the Administrator.

4. **ACQUISITION**

a. USTRANSCOM, in coordination with the Office of the Chief of Naval Operations (OPNAV), will provide MARAD specific guidance on the types and numbers of vessels essential for RRF sealift requirements, including desired features and priority of each.

(1) The above guidance will provide the basis for MARAD's development of the Source Selection Plan (Plan). The Administrator shall serve as the Source Selection Authority (SSA). MARAD shall obtain concurrence for the Plan from USCINCTRANS, acting on behalf of the DoD, prior to receiving approval of the Plan from the SSA. The Plan will provide the basic guidance to the Source Selection Evaluation Board (SSEB) in preparing solicitations and conducting acquisitions.

(2) The SSEB will be chaired by MARAD with additional representation from MARAD, the Office of the Secretary of Transportation, USTRANSCOM, the Military Sealift Command (MSC) and OPNAV, as well as any other special members the SSA agrees to as appropriate.

b. MARAD will execute the acquisition of ships in accordance with DOT/MARAD acquisition authorities and procedures.

c. MARAD will pursue all opportunities to obtain ships for the RRF by means of program authority conferred by statute, e.g., Section 510, Merchant Marine Act, 1936, as amended (46 U.S.C.

App. 1160). Exercise of such authority in the context of the RRF shall include close consultation with USTRANSCOM, acting on behalf of DoD, in coordination with OPNAV will take into account the availability of funds needed to place ships into the RRF.

5. **PREPARATION AND MAINTENANCE**

   a. Ships in the RRF will be prepared and maintained in accordance with standards set forth in the RRF Operations Management Manual; RRF Operations Management Guidelines, Volumes 1 and 2; and RRF Logistics Management Manual.

   b. All shipyard and ship repair facility work to RRF ships will be accomplished by MARAD (either directly or through its ship operating companies) and performed in the United States (except for necessary voyage repairs while overseas), in accordance with statute and DOT regulations.

   c. Subject to the availability of funds, and with regard to the aforementioned standards, the RRF ships will be outfitted and maintained on the basis of priorities agreed upon by the Points of Contact (POC) designated in Article 11 hereof. At any time the standards cannot be met, MARAD will so advise the POCs designated in Article 11, and provide a time estimate for correction.

6. **MANNING AND OPERATION OF RRF SHIPS**

   a. RRF ships will be manned and operated under Ship Manager Contracts (SMC) or General Agency Agreements (GAA) (until SMCs are executed) awarded in accordance with statute or regulation between MARAD and individual companies. At all times such contracts will be capable of being implemented immediately upon vessel activation.

   b. RRF vessels may become the subject of third party claims against the government for personal injury, property damage, or other liability. MARAD does not require operators of RRF vessels under Ship Manager Contracts or other agreements to obtain commercial Protection and Indemnity (P&I) marine insurance to cover such third party claims, except in those instances when MARAD and MSC agree that it is in the best interest of the government. MARAD will receive, investigate and resolve such claims. MARAD will notify MSC promptly upon the receipt of major claims (seaman's claim over $1,000,000 or property claim over $500,000), claims which MARAD determines may have unusual or precedent setting issues, and claims of high interest within DOD. MSC will identify funding for the payment of claims to the extent the government's liability has been established by MARAD and

approved for settlement or, if required, subsequent to final court adjudication.

  c. COMSC is USCINCTRANS' operational commander for sealift and will have operational control (OPCON) of RRF ships, except for situations where theater-assigned assets are required to be under OPCON of the appropriate unified theater commander. USTRANSCOM will consult with OPNAV prior to activation, under Articles 7.c.(1), (2) and (4) of this agreement, of RRF vessels designated as Combat Logistic Force (CLF) vessels, Offshore Petroleum Discharge System (OPDS) ships and Aviation Logistics Support Ships (T-AVB). USTRANSCOM will activate the CLF, OPDS and T-AVB's at the request of OPNAV for activation under Articles 7.c.(1), (2) and (4) of this agreement. USTRANSCOM will coordinate with the Supported CINC for requirements and consult with OPNAV and other respective service staffs as required, to properly prioritize use of all special feature vessels (CLF, OPDS, T-1 Tanker, Auxiliary Crane Ship (T-ACS), TAVB) when activating under Article 7.c.(3).

  d. Government quality assurance for performance of RRF ships during activation or operational phase is addressed in the SMC. In the event a service or product by an RRF ship does not meet the standards set forth in the applicable SMC, COMSC will, in a timely manner, notify the Administrator in writing, of the specifics of the discrepancy(ies). In accordance with the SMC, MARAD will notify the Ship Manager of the problem for resolution. During the time the government is without full benefit of the service or product, a deduction in payment, in accordance with the SMC, may be made from the Ship Manager's per diem. MARAD will determine in a timely manner if the deduction should be made. The Administrator will then notify COMSC of the determination. When deductions are made, the amount of the deduction will be returned to the sponsor of that ship through COMSC.

  e. Operational speeds for each RRF vessel will be developed by MARAD in consultation with MSC. If a vessel fails to perform up to the agreed upon speed while under MSC OPCON for other than apparent reasons, (i.e. severe weather, improper loading, an identified CASREP, etc.), MSC will notify MARAD of the specific circumstances. MARAD will investigate, determine the cause, file a report with MSC, and take corrective action. Such corrective action could include a deduction in the Ship Manager's per diem payment should non-performance within SMC standards be found.

7. <u>ACTIVATION</u>

  a. Ships in the RRF shall be activated pursuant to Presidential action or as otherwise authorized under law.

b. The SECDEF has delegated authority to USCINCTRANS, with the approval of the SECDEF, to activate vessels of the RRF. COMSC has been delegated the authority by USCINCTRANS to determine what type ship among those assigned to the RRF should be activated in defense emergencies and when needed. COMSC will consult with MARAD in determining which specific RRF ship(s) can best meet the requirement(s). No ship of the RRF shall be used to store or carry any non-defense related cargo unless so directed by SECTRANS with SECDEF concurrence.

c. Ships in the RRF, at the request of USCINCTRANS through COMSC without Presidential action:

(1) will be activated for the purpose of training and testing for readiness and suitability for mission performance in accordance with Article 8 hereof, and

(2) will be activated in connection with a transfer in accordance with Article 12 hereof, and

(3) may be activated (i) for support of the deployment of U.S. Armed Forces in a military contingency, or (ii) for military contingency operations, or (iii) for civil contingency operations upon orders from the National Command Authorities (NCA), as defined in Joint Pub 1-02, and

(4) may be activated for other defense sealift purposes for which other sealift assets are not reasonably available.

d. Ships activated under paragraph c. above, shall not be in competition with or substitute for or displace reasonably available privately owned U.S. flag vessels.

e. Ships shall be returned to MARAD as soon as practicable after the purpose for their activation has been accomplished. If an unforeseen follow-on requirement arises, DoD will notify MARAD of requirements for continued use consistent with the requirements of this article.

8. <u>TEST and INSPECTION</u>

a. Prior to the start of each fiscal year, and subject to the availability of funds, MARAD and USTRANSCOM will develop a planned DoD activation schedule of one or more ships (including operation for an extended period, normally not more than 60 days). The planned activation, utilization, and period of use will be mutually arranged between USTRANSCOM and MARAD. MARAD will, to the extent practicable, incorporate these DoD

activations into MARAD's annual maintenance test activation program to avoid duplicative activations.

b. At USCINCTRANS direction through COMSC, periodic no-notice RRF ship activation tests will be conducted. These no-notice tests will be conducted in accordance with the no-notice activation request and will consist of full ship activation, at-sea operations for a period normally not more than 60 days, and an operational test of all cargo handling equipment. These tests may be conducted in connection with other planned extended operational test periods or, at USCINCTRANS discretion, as independent activation tests.

c. For all activations under paragraphs a. and b. above, COMSC shall provide MARAD the test plan, including the projected period of activation, and written certification that substantially the same military cargo will be carried during the period of activation.

d. MARAD shall annually provide the POCs with a review including the maintenance and repair schedule, logistics status, readiness assignment, and test plans of each RRF ship. Results of this review will be used to identify RRF ship improvement projects and to adjust the readiness status of individual ships for the subsequent years. Reviews will be conducted so that project funding, including improvements and enhancements, can be included in the RRF Program Objective Memorandum (POM) planning and budget process, and funding for unique features and modifications for service-specific support operations can be included in the planning and budget submission of the sponsoring defense agency or Service.

e. MARAD will report to OPNAV, USTRANSCOM, and COMSC monthly on the readiness status of all RRF ships and on individual ships as changes occur. This information will be provided in a format agreed to by the Points of Contact designated in Article 11 hereof.

f. COMSC, in conjunction with MARAD, will observe RRF ship readiness (to include maintenance, ship activation/deactivation and associated activities) at outport and NDRF sites.

9. BUDGET ESTIMATES AND PROGRAM INFORMATION.

a. The DoD Planning, Programming and Budgeting System (PPBS) will be used for formulation of the NDRF budget, including the RRF. The POCs will coordinate to meet PPBS milestones.

(1) Consistent with Article III of the National Defense Sealift Fund (NDSF) Charter, USTRANSCOM will develop and provide annual programmatic guidance to MARAD and OPNAV regarding requirements and priorities for sealift operational mobility programs.

(2) OPNAV will provide fiscal guidance to MARAD for use in formulating program estimates and funding requirements for the forthcoming fiscal year in accordance with the PPBS.

(3) Given the guidance outlined above, MARAD will develop NDRF budget estimates, and provide them to OPNAV with a copy to USTRANSCOM.

(4) OPNAV will provide the resources necessary and be the responsible office within the PPBS to carry out all budget formulation, budget submissions, and budget execution requirements. OPNAV will use MARAD budget estimates and USTRANSCOM program requirements and priorities in developing the NDRF POM funding profile and budget. OPNAV will coordinate with MARAD and USTRANSCOM in accordance with paragraph VII. B. of the NDSF Charter when program and budget submissions differ from the programmatic guidance provided by USCINCTRANS, and when the Congressionally approved budget differs from the program and budget submissions.

10. **FUNDING**

a. Funds for expenses for maintaining the NDRF, including the RRF, as defined under section 11 of the Merchant Ship Sales Act of 1946, as amended (50 U.S.C. App. 1744), including design, construction, purchase, alteration, conversion, operation and maintenance of vessels for national defense sealift purposes will be paid from the NDSF (10 U.S.C. 2218) or as otherwise provided by law.

b. Prior to the beginning of each fiscal year, MARAD will develop a fiscal year financial plan. The plan will include major program elements, such as fleet additions, maintenance and repair, outporting, logistics and facilities refurbishment. The plan will be designed to implement DoD program guidance within the appropriated funding level.

c. MARAD will obtain funds from the NDSF via OPNAV (N09BF) pursuant to an annual one-time request order issued in accordance with 31 U.S.C. 1535 for goods or services. The order will include quarterly allocations with cash available at the beginning of each quarter as follows: the first allocation shall be equal to 45% of the fiscal year appropriated funds, the second

25%, the third 20%, and the fourth 10%. MARAD will then deposit these funds in the Vessel Operations Revolving Fund (VORF) for timely payment of program costs. Transfer of all annual RRF acquisition funds from the NDSF appropriations is to occur at the beginning of the fiscal year to assure timely award of acquisition contracts.

    d. Quarterly, MARAD will provide a financial management-style report showing budget execution progress against the current financial plan. The format and contents of the quarterly financial management reports will be mutually agreed upon by OPNAV (N09BF) and MARAD. At the end of each fiscal year, MARAD will generate a close-out financial report documenting all NDRF program costs, and distribute the report to cognizant DoD and DOT offices.

    e. Funding authority and funds for military or civil contingencies, exercises, or other defense sealift purposes that utilize NDRF vessels, will be provided incrementally as received for these circumstances. Upon receipt of activation orders from COMSC, MARAD will provide activation/deactivation cost estimates to COMSC. MARAD may request funds in advance of a large scale activation of RRF vessels, in accordance with 31 U.S.C. 1535, subject to funding for any such cash advance being provided to MSC by a sponsoring activity. MARAD invoices and supporting summary of costs will be promptly provided to MSC (N85), and in no case later than one year after the services rendered (unless specific justification is provided by MARAD). MSC will provide funds to MARAD within 30 days of the receipt of a proper invoice in accordance with 31 U.S.C. 1535, unless specific justification is provided by MSC. MSC will retain sufficient detailed documentation for all payments made to MARAD to support audit requests supporting amounts deposited on MARAD's General Ledger. MARAD's invoices will include summary costs by funding document, ship name, breakdown of costs (inclusive of costs attributed to activation, deactivation, operations which will include dates of operation, port costs, fuel, canal tolls and miscellaneous other costs). Annually as of 31 August, details of all services performed and on order and not yet invoiced by MARAD will be summarized by funding document number and by ship name and provided to MSC by 15 September. This summary will be updated annually by MARAD by 15 October to reflect changes through 30 September, in order for MSC to properly accrue expenses at the end of the fiscal year. MARAD will advise MSC by 31 August annually of all amounts available for recapture against funding documents in order to allow expeditious return of unneeded funds to MSC customers. MARAD will retain sufficient detailed documentation for amounts invoiced to MSC to support audit requests for support of amounts recorded on MSC's books of record, in compliance with the Chief Financial Officer's Act

(Public Law 101-576, Nov 15, 1990, 104 Stat. 2838, as amended) and other audits as required.

    f. Costs of non-programmed ship activations and other activities for which funds are not appropriated will be funded by the sponsoring defense agency or Service.

## 11. POINTS OF CONTACT

    a. The Director, Office of Ship Operations, is the MARAD Point of Contact with cognizance over all the NDRF matters, including the RRF.

    b. The Director, Plans and Policy (TCJ5), is the USTRANSCOM Point of Contact with cognizance over RRF program matters for purposes of this MOA.

    c. Sealift Program Manager (PM5) is the COMSC Point of Contact with cognizance over RRF operational matters.

    d. The Director, Logistics Plans and Policy/Strategic Sealift Programs Division (OPNAV N42), is the Navy Point of Contact with cognizance over RRF program matters for purposes of this MOA.

## 12. TEMPORARY TRANSFER OF RRF SHIPS

    a. From time to time, DoD may have a need for sealift capacity which can only be satisfied by a ship in the RRF, which need is beyond the scope of Articles 6, 7, and 8 hereof. Such need shall be considered under the authority conferred by 10 U.S.C. 2578, and in accordance with the following:

        (1) Any ship so transferred under this Article shall remain part of the RRF with an assigned readiness status consistent with its intended use.

        (2) Each request for a ship will be submitted to MARAD and shall include the following information:

            (a) The type of ship,

            (b) Certification that no commercial cargo will be carried,

            (c) The proposed period of use and area of operation, and

(d) The commitment that all costs associated with the request will be funded from DoD appropriations other than those available for the NDRF.

b. The Administrator must agree that these requirements cannot be met by available privately-owned commercial U.S. flag vessels.

c. The particular ship may be used by the DoD for the carriage of defense cargo as a secondary mission if such carriage does not interfere with the primary mission for which the ship was activated and conforms with paragraph a.(2) above.

d. During the period of transfer, the assigned contractor shall remain responsible for the ship, including at-sea operations, under its contract with MARAD.

e. Upon conclusion of the period of transfer, the ship will return to its regularly assigned readiness status.

## 13. MODIFICATION

This Memorandum of Agreement may be modified in whole or in part at any time by mutual agreement of the Administrator and USCINCTRANS. Either party may propose modifications whenever deemed necessary or desirable. The parties agree to consider such proposed modifications promptly.

## 14. EFFECTIVE DATE

This Memorandum of Agreement is effective __26 August__, 1997, and supersedes the previous Memorandum of Agreement dated 31 October 1988.

| US TRANSPORTATION COMMAND | MARITIME ADMINISTRATION |
|---|---|
| WALTER KROSS<br>General, USAF<br>Commander in Chief | A.J. HERBERGER<br>Maritime Administrator |
| _(Signature)_<br>26 Aug 97<br>(Date) | _(Signature)_<br>6-30-97<br>(Date) |