UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUAM INDUSTRIAL SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 05-CV01599 |
| ) | |
| DONALD H. RUMSFELD, Secretary of ) | Judge Ricardo M. Urbino |
| Defense, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

### MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

#### Preliminary Statement

Plaintiff Guam Industrial Services, Inc., d/b/a Guam Shipyard ("GIS" or "Guam Shipyard"), hereby respectfully submits this memorandum in opposition to Defendants' motion to dismiss or for summary judgment.

The Court should deny the Government's[1] motion. Defendants in their memorandum of points and authorities in support of their motion to dismiss GIS' complaint or, in the alternative, for summary judgment (hereafter cited as "Mem. in Sup."), have once again articulated three primary grounds for why GIS cannot succeed on the merits: an alleged failure to join indispensable parties, a suggested narrow scope of 10 U.S.C. Section 7310(a) (hereafter cited as "Section 7310(a)"), and an apparent inconsequentiality of the 1997 Memorandum of Agreement between DoD and DOT (hereafter cited as the "MOA") to GIS' principal claim. Mem. in Sup. at pp. 8-22.

---

[1] Donald H. Rumsfeld, Secretary of the U.S. Department of Defense ("DoD"), Gordon R. England, Secretary of the Department of Navy ("Navy"), Norman Y. Mineta, Secretary of the Department of Transportation ("DOT"), and John Jamian, Acting Administrator, Maritime Administration ("MARAD"), collectively, "Defendants."

Defendants fail in every respect to carry the heavy burden required to succeed on their motion. While the first ground is no longer applicable to the relief currently sought,[2] the second and third grounds are not only illogical and unreasonable, but require further discovery in order to develop the administrative record about Defendants' own policies and practices with respect to their definitions and interpretations of "homeport" and "voyage repairs" per the language of the statute. Remarkably, Defendants would have this Court believe that all RRF and MSC Prepositioning vessels are outside the scope of Title 10. In Defendants' view, no vessels other than commissioned "naval" vessels would ever be subject to Section 7310(a)'s requirements, thus rendering the statute's protections for vessels under the jurisdiction of the Secretary of the Navy a complete nullity. The Court should reject these illogical and unreasonable claims, afford GIS the opportunity to conduct additional discovery to develop the relevant administrative record, and deny Defendants' alternative motion to dismiss or for summary judgment.

## Factual Background

GIS owns and operates Guam Shipyard, which repairs and otherwise services maritime vessels and remains the only U.S. citizen owned and operated private shipyard located west of the International Dateline. TRO Opinion at 1; Compl. ¶ 2. As such, it is the only shipyard of its kind that can service Navy, MSC, and MARAD vessels that are under the jurisdiction and control of the Secretary of the Navy in the Pacific and Indian Oceans. Pothen Decl. ¶ 2.

---

[2] GIS continues to seek injunctive relief from the Court, pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 702-706, to prevent Defendants from unlawfully continuing to solicit bids from and/or award contracts to foreign shipyards in connection with non-voyage repairs of United States Ready Reserve Force ("RRF") vessels that are homeported in the United States in violation of Section 7310(a). However, in light of the Court's August 24, 2005 Memorandum Opinion (hereinafter, "TRO Opinion"), GIS, has narrowed its request for relief, asking the Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declare that, in accordance with the plain and unambiguous language of Section 7310(a), vessels in the RRF and those within the United States Navy's Military Sealift Command Prepositioning Program ("MSC Prepositioning Program"), an activated component of the RRF, are under the Navy's jurisdiction and control and thus subject to the statute.

The RRF is a select group of ships within the National Defense Reserve Fleet, which are maintained by DOT's MARAD and funded from the Navy-controlled National Defense Sealift Fund. Cahill Decl. ¶ 4; Pothen Decl. ¶ 4; Naval Vessel Register, www.nvr.navy.mil/stat_12.htm.

Certain vessels that are part of the RRF are also currently activated for duty with the Prepositioning Program, a program funded and administered by the Navy and under the direction of the MSC. Pothen Decl. ¶ 4; *Inventory of Ships in the MSC Prepositioning Program*, MSC website, www.msc.navy.mil/inventory. MSC is a military command within the Department of Navy and subject to the authority of the head of the Department, the Secretary of the Navy. *Id.*

MARAD contracts with commercial ship operators to maintain and operate the RRF. These vessels are kept in either maintenance phase (Phase M) or operational phase (Phase O). Cahill Decl. ¶ 4. When vessels are in Phase O they are under the operational control of the MSC. *Id.*

The ships in the MSC Prepositioning Program are strategically positioned in key ocean areas, making it possible to deploy equipment, fuel, and supplies to support U.S. military forces on short notice during times of war or as a result of other contingencies. Pothen Decl. ¶ 4; MSC website, www.msc.navy.mil/PM3. Prepositioning ships are subdivided into three separate elements: Combat Prepositioning Force Ships; Maritime Prepositioning Force Ships; and Logistics Prepositioning Ships. *Id.* All prepositioning ships are under the operational control and jurisdiction of the U.S. Navy's MSC area commands, providing direct support for the Navy's fleet commanders. *Id.* Day-to-day control of these ships is exercised by one of three Maritime Prepositioning Ship squadrons ("MPSRONs"). *Id.* Each MPSRON is under the command of a Navy Captain. *Id.* In addition to being principal components of the U.S. Navy's MSC Prepositioning Program, and administratively reporting to the Prepositioning Program Manager at MSC Headquarters in Washington, D.C., the ships in the various MPSRONs are

operational assets of the Navy's Seventh Fleet. *Id.*

## Legal Background

This action, filed on August 10, 2005, seeks injunctive relief to prevent Defendants from continuing their practice of repairing and maintaining RRF vessels in foreign shipyards in violation of Section 7310(a) and declaratory relief that the vessels in the RRF and its component part, the MSC Prepositioning Program, are under the Navy's jurisdiction and control and thus manifestly within the scope of the statute.

The statute and a formal interagency agreement between DoD and DOT reflecting their joint understanding of the Congressional intent of the statute provide the legal backdrop for this action. The plain language of Section 7310(a) encompasses RRF vessels when it explicitly refers to "vessel[s] under the jurisdiction of the Secretary of the Navy." Furthermore, in the MOA both agencies expressly recognize this logical interpretation of the Congressional intent of Title 10 when they specify that "[a]ll shipyard and ship repair facility work to RRF ships will be accomplished by MARAD (either directly or through its ship operating companies) and performed in the United States (except for necessary voyage repairs while overseas), *in accordance with the statute* and DOT regulations." (emphasis added)

Nonetheless, in the face of this manifest construction, Defendants would have this Court believe that a self-serving, after-the-fact internal agency instruction[3] trumps both Congressional intent and a clear interagency expression of this intent. Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction (hereafter cited as "Def. Opp.") at pp. 10-16; Mem. in Sup. at pp. 10-16.

---

[3] The instruction at issue is Commander Military Sealift Command Instruction 4700.15A, *Accomplishing Ship Repair in Foreign Ship Yards* (hereafter cited as "COMSCINST 4700.15A").

## Applicable Legal Standards

Defendants have filed a motion to dismiss, or in the alternative, for summary judgment pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) and Rule 56. In addition, Defendants have moved to dismiss the action under Rule 19 for failure to join indispensable parties.

A Rule 12(b)(6) motion to dismiss tests whether a plaintiff has properly stated a claim upon which relief can be granted. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The federal rules provide that the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief…". Fed. R. Civ. P. 8(a)(2); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957); *U.S. ex. rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 5 (D.D.C. 2003). Importantly, the complaint need not plead the elements of a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *see also Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). When deciding a Rule 12(b)(6) motion to dismiss, the Court must consider all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant. *Scheuer*, 416 U.S. at 236; *Bernad*, 275 F. Supp. 2d at 5. Therefore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

Pursuant to Rule 56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The moving party maintains the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp*, 477 U.S. at 323. If the Court concludes that a jury could find in favor of the non-moving party on an issue of material fact, then the issue is genuinely in dispute and precludes

summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

When adjudicating a Rule 56 motion for summary judgment, the Court must "assume the truth of all statements proffered by the party opposing summary judgment" and view all evidence in favor of the non-moving party. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Anderson*, 477 U.S. at 255; *Carter v. Greenspan*, 304 F. Supp. 2d 13, 21 (D.D.C. 2004). Furthermore, the Court must "draw all reasonable inferences in favor of the non-moving party, and…may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Washington Post Co. v. United States Dep't of Health & Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989).

Summary judgment should ordinarily be entered only after a plaintiff has been given "adequate time for discovery." *Anderson*, 477 U.S. at 257; *Celotex Corp.*, 477 U.S. at 322; *Info. Handling Services, Inc. v. Def. Automated Printing Services*, 338 F.3d 1024, 1032 (D.C. Cir. 2003). "The Court must give a party opposing summary judgment an adequate opportunity to obtain discovery." *Radich v. Goode*, 886 F.2d 1391, 1391 (3d Cir. 1989) (citing *Dowling v. Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)). Courts have consistently noted that pre-discovery summary judgment motions are premature and should only be used in exceptional circumstances. *Patton v. Gen. Signal Corp.*, 984 F. Supp. 666, 669 (W.D.N.Y 1997).

Defendants also move to dismiss under Rule 19 for failure to join indispensable parties. Rule 19(a) provides that an absent person is necessary to the litigation if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd.*, 647

F.2d 200, 207 (D.C. Cir. 1981) (a plaintiff "may sue as many or as few of the alleged wrongdoers as he chooses, those left out of the lawsuit, commentary underscores, are not indispensable parties"); 7 C. Wright, A. Miller, M. Kane, Federal Practice and Procedure, § 1623, at 342 & n. 2 (2d. ed.1986).

## Argument

1. **Plaintiff Has Not Failed to Join Indispensable Parties.**

As indicated in its last submission to this Court, GIS is not interested in disrupting the current contract between Interocean American Shipping Corporation (hereafter cited as "IASC") and Keppel Shipyard in Singapore. GIS merely seeks declaratory relief with respect to Section 7310(a)'s scope and future prohibitory relief with respect to Defendants' continued practice of repairing and maintaining RRF vessels in foreign shipyards in violation of the statute. As such, the Court can afford complete relief on GIS' claims, as Rule 19 requires, against the parties GIS has sued, even if IASC and Keppel Shipyard are not joined. Thus, IASC and Keppel Shipyard are not indispensable parties to this action. They are merely the parties to one in a series of repair contracts for RRF vessels that have been awarded by Defendants over the past seven years to various foreign shipyards, to the detriment of Guam Shipyard and other similarly situated private shipyards. Hence, Defendants' assertions on indispensable parties now ring hollow, as this Court can certainly fashion the relief requested without the need for joining these parties.

Nor is GIS seeking in any way to affect or limit the operating agreement between MARAD and the private operator. Defendants are wholly incorrect in claiming that GIS seeks "rescission" of a private contract. Mem. in Sup. at pp. 9-10. Finally, as noted in our private brief, the remedy for any failure to join a party that should be joined is not dismissal but an order joining that party.

2.  **Ready Reserve Force Vessels Are Plainly Within the Scope of Section 7310(a).**

Defendants correctly suggest that the "critical issue" with respect to the merits of this case is "whether Ready Reserve Force Vessels are under the jurisdiction of the Secretary of the Navy for purposes of Section 7310(a)." Def. Opp. at p. 5; Mem. in Sup. at p. 5. Answering this question in the negative, Defendants ask this Court to ignore the plain meaning of Section 7310(a) and a formal interagency agreement signed by representatives of two cabinet-level departments in 1997 in favor of an after-the-fact internal agency instruction given in 2000. In effect, Defendants are asking this Court to believe that COMSCINST 4700.15A trumps both Congressional intent and a clear DoD-DOT recognition and interpretive expression of this intent.

Plaintiff and Defendants agree that well-known *Chevron* standard is applicable to the instant situation. Mem. in Sup. at pp. 11-13. Under the *Chevron* standard, if the "intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). "Under settled principles of statutory and rule construction, a court may defer to administrative interpretations of a statute or regulation only when the plain meaning of the rule itself is doubtful or ambiguous." *Secretary of Labor, Mine Safety and Health Administration v. Western Fuels-Utah, Inc.*, 900 F.2d 318, 325-26 (D.C. Cir. 1990). A court should be guided by an administrative construction of a regulation only "if the meaning of the words used is in doubt." *Udall v. Tallman*, 380 U.S. 1, 16 (1965). "Deference to agency interpretations is not in order if the rule's meaning is clear on its face." *Western Fuels-Utah*, 900 F.2d at 326.

In the instant case, there is little doubt about the intention of Congress as clearly expressed in Section 7310(a) – "vessel[s] under the jurisdiction of the Secretary of the Navy…may not be overhauled repaired, or maintained in a shipyard outside the United States or

Guam…". RRF vessels are drawn from the National Defense Reserve Fleet, which is funded from the Navy-controlled National Defense Sealift Fund. Vessels in the MSC Prepositioning Program are strategically positioned to support United States military forces on short notice during times of war or as a result of other contingencies. They are under the operational control and jurisdiction of the United States Navy's MSC area commands, providing direct support for the Navy's fleet commanders. Day-to-day control of these vessels is exercised by one of three MPSRONs. Each MPSRON is under the command of a Navy Captain. These vessels are operational assets of the Navy's Seventh Fleet.

Nonetheless, Defendants continue to maintain that these vessels are not under the DoD's jurisdiction, calling GIS' reading of Section 7310(a) "expansive." Def. Opp. at p. 16; Mem. in Sup. at 15. Yet there is nothing particularly "expansive" about the concept of concurrent jurisdiction. Jurisdiction need not be exclusive – i.e. DOT/MARAD jurisdiction does not preclude DoD/naval jurisdiction. *See United States v. Corey*, 232 F.3d 1166, (9th Cir. 2000) ("there is no question that domestic lands may fall under the concurrent jurisdiction of the state and federal governments"). It is not uncommon for branches of government or departments thereof to share jurisdiction. In fact, it is Defendants' reading of the statute's scope that requires convoluted reasoning, as Defendants wish to make a distinction between vessels "being under the command of a U.S. Navy captain" and those "under the control of a Combatant Commander who does not report to…the Secretary of the Navy." Def. Opp. at p. 16; Mem. in Sup. at p. 15; MSC website, www.msc.navy.mil/mpsthree/. This attempted functional distinction strains credulity and cannot be reconciled with the plain meaning of the statute.[4]

---

[4] For example, the Commander of MPSRON Three is Captain Ronald W. Kennedy of the U.S. Navy. He is part of the Navy's chain of command. Indeed, actions that take place on RRF and MSC Prepositioning vessels "under [his] control" are under the Navy's jurisdiction.

### 3. The Formal Interagency Agreement Between DoD and DOT Lends Powerful Support to the Merits of GIS' Claims.

If, however, this Court should determine that there is some ambiguity in Section 7310(a), it must find that the MOA is the more binding expression of interagency interpretation of what vessels Congress intended to fall within the scope of Title 10. "[I]t is elementary that an agency must adhere to its own rules and regulations. Ad hoc departures from those rules, even to achieve laudable aims, cannot be sanctioned,…for therein lie the seeds of destruction of the orderliness and predictability which are the hallmarks of lawful administrative action." *Reuters Ltd. v. Federal Communications Commission*, 781 F.2d 946, 950-51 (D.C. Cir. 1986); *see also Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 536 (D.C. Cir. 1986) (Scalia, J.) ("It is axiomatic that an agency must adhere to its own regulations…"). As Defendants aptly identified previously, "with regard to rules that have not been formally promulgated, the 'law' to which an agency will be bound are those rules to which it intended to be bound." *Wilkinson v. Legal Services Corp.*, 27 F. Supp. 2d 32, 35 (D.D.C. 1998). "[S]tatements whose language, context, and application suggest an intent to bind agency discretion and private party conduct-the sort of statements requiring compliance with § 553-will have that effect if valid; interpretive rules or policy statements will not, regardless of their validity." *Vietnam Veterans of America v. Secretary of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988).

The MOA, a formal interagency agreement between DoD and DOT, provides powerful support for GIS' claims. Paragraph 5(b) of the MOA expresses a clear interagency recognition of the obligations under Section 7310(a) and a clear and binding expression of the intent to be bound by those obligations. Had this not been the agencies' collective intent, they would have left this language out of their formal agreement. An internal instruction, even if valid, cannot negate this broad, formal expression of interagency intent. Accordingly, it is hard to avoid the legal conclusion that Congress intended for, and DoD and DOT initially recognized that, all RRF

and MSC Prepositioning vessels would be under the jurisdiction and control of the Navy, and thus within the scope of Title 10.

### 4. GIS Needs an Opportunity to Develop the Relevant Record.

At this time there is an insufficient record to enable this Court to determine whether Defendants' assertions about the critical concepts of "homeport" and "voyage repairs" are valid and accurate. *See, e.g., Association of American Physicians and Surgeons, Inc. v. Clinton*, 997 F.2d 898, 915 (D.C. Cir. 1993) (finding that there was insufficient record evidence with respect to a "key issue" in an action for injunctive relief); *Protestants and Other Americans United for Separation of Church and State v. Watson*, 407 F.2d 1264, 1266 (D.C. Cir. 1968) (finding "an insufficient record to render a comprehensive decision" in an action for declaratory and injunctive relief). GIS should be allowed to conduct further discovery and motion practice on the issues of how Defendants' internal practices and procedures define and interpret "homeport" and "voyage repairs" per the language of the statute. *See Riggs v. Home Builders Institute*, 203 F.Supp.2d 1, 17 (D.D.C. 2002) (finding a plaintiff had "not yet had an opportunity to develop a record to flush out the necessary factual support for his allegations"). At this time, there is simply not enough of a record before the Court to make these important determinations.

### Conclusion

Defendants' interpretation of the scope of Section 7310 cannot be gleaned from the language of the statute or the MOA. The construction offered is nothing more than a self-serving ad hoc attempt to justify a failure to properly apply Title 10's provisions. Unless and until such time as this Court grants declaratory and injunctive relief, future non-voyage repair contracts for RRF and MSC Prepositioning vessels homeported in the United States and under the Navy's jurisdiction and control will continue to be awarded to foreign shipyards to the detriment of Guam Shipyard and other similarly situated private United States shipyards in clear violation of

the statute. For the reasons set forth above, this Court should reject Defendants' illogical and unreasonable claims, afford GIS the opportunity to conduct additional discovery to develop the relevant administrative record, and deny Defendants' premature motion to dismiss, or in the alternative, for summary judgment, pending a decision on the underlying merits of this case.

    Respectfully submitted,

By: /s/Thomas Earl Patton
Thomas Earl Patton (D.C. No. 009761)
John B. Montgomery (D.C. No. 460221)
David Taylor (D.C. No. 91280)
*Attorneys for Plaintiff*
TIGHE PATTON ARMSTRONG
TEASDALE, PLLC
1747 Pennsuylvania Ave. N.W. Suite 300
Washington, D.C. 20006-4604
Tel. (202) 454 2800
Fax (202) 454- 2805


OF COUNSEL:

ARMSTRONG TEASDALE LLP
Edwin L. Noel (Mo. No. 24184)
F. Scott Galt (Mo. No. 56548)
One Metropolitan Square, Suite 2600
St. Louis, MO. 63102-2740
TEL: (314) 621-5070
FAX: (314) 621- 5065


### CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on this ____ day of September, 2005, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system and/or was mailed by United States Postal Service to the non-participants in Electronic Case Filing.


    _____/s/Thomas Earl Patton_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GUAM INDUSTRIAL SERVICES, INC., )
d/b/a Guam Shipyard, )
 )
      Plaintiff, )
 )
vs. )  Civil Action No. 05-1599 (RMU)
 )
DONALD H. RUMSFELD, Secretary of )
Defense, et al., )
 )
      Defendants. )
 )

## PLAINTIFF'S STATEMENT OF FACTS AS TO WHICH THERE EXIST GENUINE MATERIAL ISSUES

Plaintiff Guam Industrial Services, Inc., d/b/a Guam Shipyard ("GIS" or "Guam Shipyard"), by its undersigned attorneys and pursuant to LCvR 7(h), hereby respectfully submits the following statement of material facts as to which plaintiff contends there exist genuine issues necessary to be litigated.

1.    10 U.S.C. § 7310(a) provides as follows:

> **Vessels with homeport in the United States.** -- A naval vessel (or any other vessel under the jurisdiction of the Secretary of the Navy) the homeport of which is in the United States may not be overhauled, repaired, or maintained in a shipyard outside the United States or Guam, other than in the case of voyage repairs.

2.    Defendants have and continue to solicit bids from and/or award contracts to foreign shipyards in connection with non-voyage repairs of United States Ready Reserve Force ("RRF") vessels that are homeported in the United States.

3.    The RRF is a select group of ships within the National Defense Reserve Fleet, which are maintained by the Department of Transportation's ("DOT") Maritime Administration ("MARAD") and funded from the Navy-controlled National Defense Sealift Fund. *See* Declaration of William H. Cahill, dated 6 September 2005 ("Cahill Decl."), ¶ 4 at p. 2. *See also*

Declaration of Mathews Pothen, dated 16 August 2005 ("Pothen Decl.") [copy attached as Exhibit 1], ¶ 4 at pp. 3-4; Naval Vessel Register, publicly available at www.nvr.navy.mil/stat_12.htm [copy attached as Exhibit 2].

    4.    RRF vessels are under the jurisdiction and operational control of the Secretary of the Navy.

    5.    Certain vessels that are part of the RRF are also currently activated for duty with the United States Navy's Military Sealift Command Prepositioning Program ("MSC Prepositioning Program"), a program funded and administered by the Navy and under the direction of the MSC. MSC is a military command within the Department of Navy and subject to the authority of the head of the Department, the Secretary of the Navy. *See* Pothen Decl., ¶ 4 at pp. 3-4; and *see Inventory of Ships in the MSC Prepositioning Program*, publicly available on the MSC website at www.msc.navy.mil/inventory [copy attached as Exhibit 3].

    6.    MSC vessels are under the jurisdiction and operational control of the Secretary of the Navy.

    7.    The Department of Defense ("DoD") and MARAD, on behalf of DOT, entered into a formal interagency agreement reflecting their joint understanding of the Congressional intent of Section 7310(a). *See Memorandum of Agreement between Department of Defense and Department of Transportation* ("MOA"), dated 28 August 1997.

    8.    Paragraph 5(b) of the MOA provides as follows:

> All shipyard and ship repair facility work to RRF ships will be accomplished by MARAD (either directly or through its ship operating companies) and performed in the United States (except for necessary voyage repairs while overseas), in accordance with the statute and DOT regulations (emphasis added).

    9.    An after-the-fact internal agency instruction with respect to Section 7310(a) was issued in February 2000. *See Commander Military Sealift Command Instruction 4700.15A*,

*Accomplishing Ship Repair in Foreign Ship Yards*, dated 2 February 2000 ("COMSCINST 4700.15A").

    10.    The contents of the 1997 MOA provide a broader and clearer interagency expression of intent with respect to Section 7310(a) than do those of the 2000 COMSCINST 4700.15A.

Respectfully submitted,

By: /s/Thomas Earl Patton
Thomas Earl Patton (D.C. No. 009761)
John B. Montgomery (D.C. No. 460221)
David Taylor (D.C. No. 91280)
*Attorneys for Plaintiff*
TIGHE PATTON ARMSTRONG
TEASDALE, PLLC
1747 Pennsuylvania Ave. N.W. Suite 300
Washington, D.C. 20006-4604
Tel. (202) 454 2800
Fax (202) 454- 2805

OF COUNSEL:

ARMSTRONG TEASDALE LLP
Edwin L. Noel (Mo. No. 24184)
F. Scott Galt (Mo. No. 56548)
One Metropolitan Square, Suite 2600
St. Louis, MO. 63102-2740
TEL: (314) 621-5070
FAX: (314) 621- 5065

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this ____ day of September, 2005, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system and/or was mailed by United States Postal Service to the non-participants in Electronic Case Filing.

                                      _____/s/Thomas Earl Patton_____