**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                        )
GUAM INDUSTRIAL SERVICES, INC.,          )
d/b/a Guam Shipyard,                                )
                                                        )
      Plaintiff,                                 )
                                                        )
           v.                              )          Civil Action No. 05-1599 (RMU)
                                                        )
DONALD H. RUMSFELD, Secretary of          )
Defense, et al.,                                        )
                                                        )
      Defendants.                            )
_____ )

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS OR FOR SUMMARY JUDGMENT**

      Defendants, by their undersigned attorneys and pursuant to LCvR 7(d) and the

briefing schedule established by the Court's September 9, 2005 Minute Order (R. 22),[1]

hereby respectfully submit the following reply memorandum in support of their motion to

dismiss or for summary judgment in the above-captioned civil action.

**Background**

      The Prayer for Relief in plaintiff's Complaint, at pp. 8-10, consists of twelve

separately-numbered paragraphs.  Six of those requests for relief (Paragraphs 1-5 and 8)

_____

[1] "R. __" denotes the corresponding numbered entry in the Court's electronic
docket for this case.

pertain exclusively to the repair work currently being performed on SS PETERSBURG at a foreign shipyard in Singapore. Three other requests (Paragraphs 6, 7, and 9) concern the use of foreign shipyards to make "non-voyage repairs to all RRF [*i.e.*, Ready Reserve Force] ships, or, at a minimum, to all RRF ships activated for duty with the Navy's MSC [*i.e.*, Military Sealift Command] Prepositioning Program, including, but not limited to, SS Petersburg." The balance of the Prayer for Relief requests the issuance of "writs of prohibition and/or mandamus as necessary and appropriate" (Paragraph 10), an award of attorney's fees under the Equal Access to Justice Act (Paragraph 11), and "such other and further relief as this Court deems appropriate" (Paragraph 12). The Complaint asserts that plaintiff is entitled to the requested relief because the use of foreign shipyards to repair RRF vessels is prohibited by: (1) 10 U.S.C.A. § 7310(a) ("Section 7310(a)"); (2) a 1997 Memorandum of Agreement ("MOA") between the Department of Defense ("DoD") and the Department of Transportation ("DOT"); and (3) the Ship Manager Contract that is entered into, pursuant to 50 App. U.S.C.A. § 1744(c)(2), by and between DOT's Maritime Administration ("MARAD") and the entities that manage vessels in the RRF. *See* Complaint, ¶¶ 27-37 at pp. 6-8.

Defendants have moved to dismiss the Complaint or for summary judgment on three grounds. First, to the extent plaintiff is seeking to enjoin or overturn the contract for the repairs to SS PETERSBURG that are currently in progress in Singapore, plaintiff has failed to join indispensable parties under Fed. R. Civ. P. 19(b). Second, RRF vessels are

not subject to Section 7310(a) as a matter of law.  Third, the MOA and Ship Manager

Contract do not prohibit the use of foreign shipyards to repair RRF vessels, and do not in

any event create rights that plaintiff can enforce because plaintiff is not a party to either of

those contractual agreements.

In its opposition to defendants' motion, plaintiff has narrowed its claims in two

significant respects.  First, plaintiff now states that it "is not interested in disrupting the

current contract between Interocean American Shipping Corporation [the private

corporation that has contracted with MARAD to be SS PETERSBURG's ship manager]

and Keppel Shipyard in Singapore" for the current repairs to SS PETERSBURG.  Instead,

plaintiff "merely seeks declaratory relief with respect to Section 7310(a)'s scope and

future prohibitory relief with respect to Defendants' continued practice of repairing and

maintaining RRF vessels in foreign shipyards."  *See* Memorandum in Opposition to

Defendants' Motion to Dismiss or for Summary Judgment ("Opposition"), at p. 7.  *See

also id.* at p. 2 n.2.  Second, plaintiff has apparently abandoned its reliance on the Ship

Manager Contract, as that contract is not mentioned as a basis for plaintiff's opposition to

defendants' motion.  Indeed, the only reference to the Ship Manager Contract that appears

in plaintiff's opposition is the statement that plaintiff is not seeking "in any way to affect

or limit the operating agreement between MARAD and the private operator" of SS

PETERSBURG.  *See* Opposition at p. 7.[2]

Plaintiff continues to argue that RRF vessels are subject to Section 7310(a) and

asserts that the MOA "lends powerful support" to this claim.  *See* Opposition, at pp. 8 -

11.  In addition, plaintiff argues that it should be permitted to conduct discovery "to

develop the relevant record."  *Id.* at p. 11.

**Argument**

The arguments in plaintiff's Opposition are insufficient to defeat defendants'

dispositive motion for the following reasons.

**1.    There is No Legal Prohibition against the use of Foreign
         Shipyards to Repair RRF Vessels**.

Section 7310(a) applies only to "naval vessel[s]" and "other vessel[s] under the

jurisdiction of the Secretary of the Navy."  *See* 10 U.S.C.A. § 7310(a).  Defendants have

shown -- and plaintiff does not claim otherwise in its Opposition -- that RRF ships are not

"naval vessels."  The universe of "naval vessels" is limited to those categories of vessels

and service craft that are owned and operated by the Navy and listed in U.S. Navy

---

[2] When a plaintiff files a response to a dispositive motion but fails to address
certain arguments made by the defendant, the court may treat those arguments as
conceded.  *See, e.g., Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002).
Because plaintiff has not addressed defendants' arguments with respect to MARAD's
Ship Manager Contract, therefore, those arguments should be deemed conceded, and
plaintiff's claims should be dismissed to the extent they are based on the Ship Manager
Contract.

Regulation § 406 (i.e., vessels designated USS, USNS, or service craft).  RRF vessels do

not fall into any of those categories.  Rather, RRF vessels have a status distinct from those

listed in U.S. Navy Regulation § 406 because, unlike naval vessels, RRF vessels are titled

by MARAD under U.S. vessel documentation laws, do not carry either the "USS" or

"USNS" designation, and are not naval service craft, which are generally small boats and

harbor craft.  *See* Declaration of Captain James Driscoll, U.S. Navy ("Driscoll Dec.")

[Defendants' Exhibit 1], ¶¶ 9-10 at p. 3.[3]

Therefore, plaintiff and defendants agree that "the 'critical issue' with respect to

the merits of this case is 'whether Ready Reserve Force vessels are under the jurisdiction

of the Secretary of the Navy for purposes of Section 7310(a).'"  *See* Opposition at p. 8

(quoting Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction and

Defendants' Memorandum in support of their Motion to Dismiss or for Summary

Judgment).  Furthermore, "Plaintiff and Defendants agree that [the] well-known *Chevron*

standard is applicable to the instant situation."  *Id.* (citing Defendants' Memorandum in

support of their Motion to Dismiss or for Summary Judgment).  It is at this point that the

parties' positions begin to diverge.

Plaintiff asserts that this case can be resolved at step one of the *Chevron* analysis

based on "the concept of concurrent jurisdiction."  Because "jurisdiction need not be

---

[3] Defendants' Exhibits 1-7 were submitted with Defendants' Motion to Dismiss or
for Summary Judgment.  Defendants' Exhibits 8-11 are submitted herewith.

exclusive," plaintiff contends that if the Secretary of the Navy can be said to have jurisdiction over RRF vessels for any purpose, there should be no further inquiry because such jurisdiction, regardless of its nature or scope, is sufficient to trigger application of Section 7310(a).  In this connection, plaintiff argues that RRF vessels are "under the jurisdiction of the Secretary of the Navy" because (1) such vessels "are drawn from the National Defense Reserve Fleet, which is funded from the Navy-controlled National Defense Sealift Fund," and (2) activated RRF vessels are under the day-to-day tactical control of a Maritime Prepositioning Ship Squadron ("MPSRON") commanded by a U.S. Navy captain who is "part of the Navy's chain of command."  *See* Opposition at p. 9 & n.4.  Examination of these arguments, however, undermines plaintiff's claim and serves to highlight the absence of any Congressionally-specified delimitation of the Secretary of the Navy's jurisdiction for purposes of Section 7310(a).

RRF vessels are part of the National Defense Reserve Fleet, and the statute authorizing the National Defense Reserve Fleet expressly assigns responsibility to "maintain" the vessels in the fleet, "including any vessel assigned to the Ready Reserve component of the fleet," to the Secretary of Transportation, not to the Secretary of the Navy.  *See* 50 App. U.S.C.A. §§ 1744(a) & (c)(1).  Although funding for the maintenance of the National Defense Reserve Fleet is provided from the National Defense Sealift Fund, *see* 10 U.S.C.A. § 2218(c)(1), that fund is not -- contrary to plaintiff's unsupported assertion -- "Navy-controlled."

The National Defense Sealift Fund has been established "in the Treasury of the United States" pursuant to 10 U.S.C.A. § 2218(a). Responsibility for the administration of the Fund is assigned by statute to the Secretary of Defense, not to the Secretary of the Navy. *See id.* § 2218(b). Appropriations for the Fund are stated separately from Navy appropriations in DoD appropriations Acts,[4] and the Navy merely administers the Fund, as DoD's designated Executive Agent, for and on behalf of DoD. *See* Declaration of James T. White III [Defendants' Exhibit 8]. Thus, the National Defense Sealift Fund is a DoD fund, not a Navy fund.

The assignment of activated RRF vessels to MPSRONs under the command of a U.S. Navy captain is also insufficient to demonstrate that the Secretary of the Navy has jurisdiction over those vessels. As naval officers, the commanders of the MPSRONs are obviously "part of the Navy's chain of command," *see* Opposition at p. 9 n.4, but this fact is not dispositive of the extent of the Secretary of the Navy's jurisdiction. As defendants have shown -- and plaintiff has not disputed -- once an RRF vessel is activated for duty, operational control over the vessel is transferred to a Combatant Commander who does not report to and is not under the supervision of the Secretary of the Navy. Consequently, although the MPSRON commanders are part of the Secretary of the Navy's chain of command for some purposes, they serve under a different chain of command for the

---

[4] *See, e.g., Department of Defense Appropriations Act, 2005*, Pub. L. 108-287, Title V, 118 Stat. 966 (August 5, 2004); *National Defense Appropriations Act for Fiscal Year 2004*, Pub. L. 108-136, § 302, 117 Stat. 1427 (November 24, 2003).

purpose of operational control over the vessels in their MPSRONs. *See* Driscoll Dec., ¶¶ 7-8 at pp. 2-3. Therefore, it is simply incorrect for plaintiff to suggest that the Secretary of the Navy's jurisdiction extends to operational control over activated RRF vessels. Operational control over such vessels (along with Navy warships and Navy auxiliaries) instead resides with the Combatant Commander to whom the vessels are assigned, and is not even indirectly within the Secretary of the Navy's jurisdiction. *Id.*, ¶ 8 at p. 3.

Nothing in Section 7310(a) supports plaintiff's "concept of concurrent jurisdiction" or otherwise indicates how the "jurisdiction of the Secretary of the Navy" should be defined for purposes of that statute. Accordingly, the Court must proceed to step two of the *Chevron* analysis and consider "whether the agency's answer is based on a permissible construction" of the statute. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). To survive judicial scrutiny, the agency's resolution of an issue as to which a statute is silent or ambiguous "need not be the best or most natural one," so long as it is reasonable. *See Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991). Where the agency's interpretation is reasonable, a court "may not substitute [its] own construction of [the] statutory provision." *Fernandez v. Brock*, 840 F.2d 622, 631 (9th Cir. 1988); *accord, e.g., Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 94-95 (1995). In this connection, it is significant to note for purposes of the instant case that the Court of Appeals has held that "an agency's interpretation of its own statutory jurisdiction" is entitled to *Chevron* deference. *See*

*Transmission Access Policy Study Group v. FERC*, 225 F.3d 667, 694 (D.C. Cir. 2000),

*aff'd*, 535 U.S. 1 (2002).

The Navy's official interpretation of Section 7310(a) is contained in Commander

Military Sealift Command Instruction 4700.15A, *Accomplishing Ship Repair in Foreign*

*Shipyards* (dated 2 February 2000) [Defendants' Exhibit 5] (hereafter cited as

"COMSCINST 4700.15A"), www.msc.navy.mil/instructions/pdf/m470015a.pdf.  This

instruction defines "vessels under the jurisdiction of the Secretary of the Navy" as

follows:

> Vessels under the jurisdiction of the Secretary of the Navy include USNS
> ships and ships which are bareboat chartered.  MARAD's Ready Reserve
> Force (*RRF*) vessels, MSC time chartered ships (*such as Maritime*
> *Prepositioning ships*) and voyage chartered ships are not considered to be
> under the jurisdiction of the Secretary of the Navy and therefore are not
> required to comply with the provisions of Title 10 U.S. Code, Section
> 7310(a).

*Id.*, ¶ 4.d (italics in original).  Thus, under the Navy's interpretation of Section 7310(a),

RRF vessels are not "under the jurisdiction of the Secretary of the Navy," and so are not

covered by the statute.

Plaintiff argues in its Opposition that COMSCINST 4700.15A should not be given

*Chevron* deference because, plaintiff asserts, it is "a self-serving, after-the-fact internal

agency instruction."  *See* Opposition at p. 4.  This characterization of COMSCINST

4700.15A constitutes a major shift in plaintiff's position, because plaintiff had previously

conceded that the instruction is "[t]he controlling regulation."  *See* Plaintiff's Motion for

Reconsideration and Correction, and Supporting Points and Authorities, ¶ 5 at p. 3 (R. 12, filed August 26, 2005). Moreover, plaintiff is foreclosed from denying that COMSCINST 4700.15A is entitled to *Chevron* deference by the doctrine of res judicata because of the final judgment entered against plaintiff in *Guam Industrial Services, Inc. v. United States*, Case No. 03-706C (Ct. Fed. Cl. June 9, 2003) [Defendants' Exhibit 2]. In particular, the United States Court of Federal Claims found that COMSCINST 4700.15A was "the controlling agency instruction in [that] case" and was entitled to *Chevron* deference. *See id.* at pp. 2 & 7. Accordingly, the status of the instruction under *Chevron* is an issue that was or could have been raised and decided in plaintiff's earlier action. Plaintiff may not relitigate the issue here. *See Johnson v. Ashcroft*, Civil Action No. 02-1745 (RMU), 2005 WL 2064095, *3 (D.D.C. August 25, 2005) (citing authorities).

Even if plaintiff could somehow evade the bar of res judicata, the Navy's interpretation that RRF vessels are not under the jurisdiction of the Secretary of the Navy for purposes of Section 7310(a) is reasonable and should be accorded deference by the Court. Section 7310(a) regulates the overhaul, repair, and maintenance by foreign shipyards of naval vessels and other vessels under the jurisdiction of the Secretary of the Navy. As pointed out above, responsibility for the maintenance of vessels in the National Defense Reserve Fleet, including RRF vessels, is assigned by statute to the Secretary of Transportation. *See* 50 App. U.S.C.A. §§ 1744(a) & (c)(1). For purposes of a statute regulating vessel maintenance, such as Section 7310(a), it is both logical and reasonable

for the Secretary of the Navy to define his jurisdiction so as to conform to Congress's assignment of responsibility to "maintain" the vessels in question.

Contrary to plaintiff's claim, *see* Opposition at p. 2, the Navy's interpretation of Section 7310(a) does not mean that only "commissioned 'naval' vessels would ever be subject to [the statute's] requirements." Paragraph 4.d. of COMSCINST 4700.15A expressly states that "[v]essels under the jurisdiction of the Secretary of the Navy include USNS ships and ships which are bareboat chartered."

Plaintiff is equally wrong if plaintiff intends to argue that the Navy is attempting to exclude all ships in the MSC Prepositioning Program from Section 7310(a). The MSC Prepositioning Program is not, as plaintiff asserts, an "activated component of the RRF." *See* Opposition at p. 2 n.2. *See also id.* at p. 4 (asserting that MSC Prepositioning Program is a "component part" of the RRF). In fact, the opposite is true: activated RRF vessels are a component part of the MSC Prepositioning Program. There are currently 36 ships in the MSC Prepositioning Program of which only 5 are RRF vessels, 20 are privately owned vessels under time charter, and 11 are DoD-owned, contractor operated public vessels designated "USNS." *See* "Ship Inventory" link on MSC's website, http://www.msc.navy.mil (as visited on October 7, 2005). Defendants do not dispute that the latter 11 vessels are subject to Section 7310(a). *See* Declaration of Michael F. Neuhardt [Defendants' Exhibit 9].

Plaintiff is also wrong to assert that the MOA "lends powerful support to the merits of [plaintiff's] claims." *See* Opposition at p. 10. Plaintiff's argument in this respect also appears to constitute a shift in plaintiff's position. Plaintiff originally invoked the so-called *Accardi* doctrine to argue that the MOA (and MARAD's Ship Manager Contract) was a "regulation" that prohibited repair of RRF vessels in foreign shipyards independent of the statutory requirements of Section 7310(a). *See* Plaintiff's Memorandum in Support of its Motion for a Preliminary Injunction at pp. 15-16 (R. 3, filed August 19, 2005); Complaint, ¶¶ 36-37 at p. 8. Although plaintiff reasserts this argument in its Opposition, plaintiff fails to address the fact that MOA is not a regulation but a contract between DoD and DOT, or to cite any authority for "its standing to enforce the provisions of a contract to which it is not a party." *See* Memorandum Opinion Denying Plaintiff's Motion for a Temporary Restraining Order at p. 12 (R. 10, filed August 24, 2005). Therefore, even assuming that the MOA could be read to require that repair and maintenance work on RRF vessels be performed in domestic shipyards, plaintiff has no enforceable rights under that agreement. *See, e.g., Nat'l Small Shipments Traffic Conference, Inc. v. ICC*, 725 F.2d 1442, 1449 (D.C. Cir. 1984) (rejecting application of *Accardi* doctrine where rule at issue "was not designed to protect either individual rights or wards of the federal government").

In tacit recognition that its *Accardi* doctrine argument lacks merit, plaintiff has now recharacterized the argument in *Chevron* terms. In particular, plaintiff also contends

in its Opposition that the MOA "is the more binding expression of interagency interpretation of what vessels Congress intended to fall within the scope of Title 10," and that "Paragraph 5(b) of the MOA expresses a clear interagency recognition of the obligations under Section 7310(a)." *See* Opposition at p. 10. This attempt to portray the MOA as the definitive agency interpretation of Section 7310(a)'s scope is unavailing.

The Court of Appeals has made clear that "[u]nder *Chevron* Step 2, courts owe deference to an agency's interpretation of a statute it is entrusted to administer." *AFL-CIO v. Chao*, 409 F.3d 377, 384 (D.C. Cir. 2005); *see American Library Ass'n v. FCC*, 406 F.3d 689, 699 (D.C. Cir. 2005). Conversely, no deference is given to an agency's interpretation of a statute that is not committed to its administration. *See, e.g., Alabama Rivers Alliance v. FERC*, 325 F.3d 290, 296-97 (D.C. Cir. 2003) (citing authorities). The administration of Section 7310(a) is entrusted to the Secretary of the Navy by the statute's own terms. The MOA, on the other hand, was entered into by the Commander in Chief, U.S. Transportation Command, on behalf of DoD, and the Administrator of MARAD, on behalf of DOT. *See* Defendants' Exhibit 7. The Secretary of the Navy is not a party to the MOA. Consequently, to the extent that the MOA could be construed to reflect an interpretation of Section 7310(a), that interpretation is entitled to no deference. *See, e.g., City of Olmsted Falls v. FAA*, 292 F.3d 261, 270 (D.C. Cir. 2002) ("[W]hen we are faced with an agency's interpretation of a statute *not* committed to its administration, we give no deference.") (emphasis in original).

-13-

By contrast, COMSCINST 4700.15A stands as the Navy's official interpretation of Section 7310(a).  In SECNAV Instruction 5430.11E, *Prescribing Channels of Responsibility for Military Sealift Command* (dated 26 May 1994) [Defendants' Exhibit 10], http://neds.daps.dla.mil/directives/5430_11e.pdf, the Secretary of the Navy designated the Military Sealift Command "as a Navy Head of Contracting Activity" and made MSC "responsible to the Assistant Secretary of the Navy (Research, Development and Acquisition) (ASN (RD&A)) for procurement policy and oversight." *Id.*, ¶ 3 at p. 1. The ASN (RD&A) has been designated as the Department of the Navy's Senior Procurement Executive pursuant to 41 U.S.C.A. § 414(c)(1), and has been directed by the Secretary of the Navy to "establish procurement policy respecting MSC as a Navy Head of Contracting Activity."  *See* SECNAV Instruction 5430.11E, ¶ 4(c) at p. 2. COMSCINST 4700.15A was issued by the Commander of MSC pursuant to these delegations of authority, and is therefore properly viewed as the Secretary of the Navy's formal policy pronouncement on the Secretary's "jurisdiction" for purposes of Section 7310(a).  *See* Declaration of Capt. Joseph L. Spruill, Sr. [Defendants' Exhibit 11].

In short, as between the MOA and COMSCINST 4700.15A, there can be no doubt that the latter is "the more binding" agency interpretation of what vessels are covered by Section 7310(a), and should be given deference under *Chevron* step two.

## 2.    Discovery is Unnecessary for the Resolution of this Case.

Plaintiff argues that the terms "homeport" and "voyage repairs," as used in Section 7310(a), are "critical," and that plaintiff should therefore be permitted to conduct discovery "on the issues of how Defendants' internal practices and procedures define and interpret "homeport" and "voyage repairs" per the language of the statute." *See* Opposition at p. 11. This argument is puzzling because the proposed discovery is obviously pointless in light of the current posture of this case.

The definitions of "homeport" and "voyage repairs" are relevant only when determining whether a vessel that would otherwise be covered by Section 7310(a) (i.e., a "naval vessel" or "any other vessel under the jurisdiction of the Secretary of the Navy") may be repaired in a foreign shipyard. It is defendants' position, however, that RRF vessels are not covered by Section 7310(a) at all because RRF vessels are neither "naval vessels" nor "other vessels under the jurisdiction of the Secretary of the Navy." Defendants contend, therefore, that any RRF vessel, including an RRF vessel activated for duty with the MSC Prepositioning Program, may be repaired in a foreign shipyard regardless of the vessel's homeport or the nature of the repairs. Consequently, the exceptions set forth in Section 7310(a) based on a vessel's homeport and type of repair are beside the point as far as RRF vessels are concerned.

Defendants previously cited to the Navy's interpretation of "homeport" and "voyage repairs" only in response to plaintiff's claims about the repairs now being made to SS PETERSBURG in the Singapore shipyard. Specifically, defendants showed that, even assuming

SS PETERSBURG were a vessel under the jurisdiction of the Secretary of the Navy -- which it is not -- the current repair work could still be performed in Singapore because SS PETERSBURG would then be considered homeported overseas, and because the repair work would qualify as voyage repairs.  *See* Memorandum in support of Defendants' Motion to Dismiss or for Summary Judgment at pp. 11-12 n.5 & 21-22 (R. 18, filed September 8, 2005).  Any issues in that respect are, of course, now moot because plaintiff has withdrawn its claims involving the repairs currently being made to SS PETERSBURG.  Accordingly, because this case no longer involves any specific repairs to any particular vessel, the definitions of "homeport" and "voyage repairs" no longer have any relevance to the case's ultimate resolution.

Simply put, plaintiff's request for discovery is a red herring.  Plaintiff has failed to demonstrate either that it cannot "present by affidavit facts essential to justify [its] opposition" to defendants' dispositive motion, *see* Fed. R. Civ. P. 56(f), or that there is any genuine issue of material fact necessary to be litigated  before this case can be resolved on the merits.[5]  Permitting discovery under these circumstances would therefore contravene Fed. R. Civ. P. 1, which mandates application of the rules "to secure the just, speedy, and inexpensive determination of every action."

---

[5] See Defendants' Response to "Plaintiff's Statement of Facts as to which there Exist Genuine Material Issues," attached.

**Conclusion**

Therefore, based on the foregoing, and on the entire record herein, defendants respectfully

submit that the Court should grant defendants' dispositive motion, enter judgment in defendants'

favor, and dismiss plaintiff's complaint with prejudice.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney


_____
R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney


_____
DANIEL F. VAN HORN
D.C. Bar No. 924092
Assistant United States Attorney


_____
KATHLEEN M. KONOPKA
Assistant United States Attorney

United States Attorney's Office
Civil Division, Room E-4816
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7168
daniel.vanhorn@usdoj.gov

OF COUNSEL:

JANIS RODRIGUEZ, Esq.
Maritime Administration
U.S. Department of Transportation

-17-

ALAN W. MENDELSOHN, Esq.
CHARNA SWEDARSKY, Esq.
Department of the Navy

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
GUAM INDUSTRIAL SERVICES, INC.,          )
d/b/a Guam Shipyard,                     )
                                        )
         Plaintiff,                      )
                                        )
         v.                              )    Civil Action No. 05-1599 (RMU)
                                        )
DONALD H. RUMSFELD, Secretary of         )
Defense, et al.,                         )
                                        )
         Defendants.                     )
_____ )

**DEFENDANTS' RESPONSE TO "PLAINTIFF'S STATEMENT OF FACTS
AS TO WHICH THERE EXIST GENUINE MATERIAL ISSUES"**

Defendants, by their undersigned attorneys, hereby respectfully submit the
following response to numbered paragraphs of plaintiff's statement of facts as to which
plaintiff alleges there exist genuine material issues:

1.    Deny because plaintiff has misquoted 10 U.S.C. § 7310(a); however, there
is no genuine issue as to the contents of 10 U.S.C. § 7310(a), and the Court is respectfully
referred to that statute for a complete and accurate statement thereof.

2.    Deny because solicitations and contract awards for repairs of RRF vessels
are not made by defendants but by the entities, such as Interocean American Shipping
Corporation, that manage vessels in the RRF pursuant to Ship Manager Contracts entered

-1-

into with MARAD pursuant to 50 App. U.S.C.A. § 1744(c)(2). *See* Complaint, ¶¶ 19-23.

Any issue of fact in this respect is not material because it is defendants' position that RRF

vessels are not covered by 10 U.S.C.A. § 7310(a) at all. Defendants contend, therefore, that any

RRF vessel, including an RRF vessel activated for duty with the MSC Prepositioning Program,

may be repaired in a foreign shipyard regardless of the vessel's homeport or the nature of the

repairs.

3.      Admit, except to deny that the National Defense Sealift Fund is "Navy-

controlled." The National Defense Sealift Fund is authorized by 10 U.S.C.A. § 2218(a) for the

purpose, *inter alia*, "of maintaining the National Defense Reserve Fleet" established under 50

App. U.S.C.A. § 1744, which includes the RRF. *See* 10 U.S.C.A. § 2218(c)(1)(E).

Responsibility for the administration of the National Defense Sealift Fund is assigned by statute

to the Secretary of Defense, not to the Secretary of the Navy. *See id.* § 2218(b). Appropriations

for the National Defense Sealift Fund are stated separately from Navy appropriations in

DoD appropriations Acts,[1] and the Navy merely administers the Fund, as DoD's

designated Executive Agent, for and on behalf of DoD. *See* Declaration of James T.

White III [Defendants' Exhibit 8].

4.      This assertion is a legal conclusion which is not supported by any citation to

the record and which defendants deny for the reasons set forth in their moving papers and

reply memorandum.

---

[1] *See, e.g., Department of Defense Appropriations Act, 2005*, Pub. L. 108-287, Title V, 118 Stat. 966 (August 5, 2004); *National Defense Appropriations Act for Fiscal Year 2004*, Pub. L. 108-136, § 302, 117 Stat. 1427 (November 24, 2003).

5.      Admit, except to deny plaintiff's assertions as to MSC's funding, administration, and command relationships, and aver that such assertions are incomplete and misleading.  Accurate information as to those matters is available at the "MSC Overview" link on MSC's website, http://www.msc.navy.mil (as visited on October 7, 2005).  Any factual issue as to those matters is not material because the parties agree that the critical issue on the merits of plaintiff's claim is whether RRF vessels are under the jurisdiction of the Secretary of the Navy for purposes of 10 U.S.C. § 7310(a).  Defendants deny that RRF vessels are under the jurisdiction of the Secretary of the Navy for the reasons explained in their moving papers and reply memorandum.

6.      This assertion is a legal conclusion, is not supported by any citation to the record, and is vague because plaintiff has not defined the term "MSC vessels."  Any factual issue as to this matter is not material because the parties agree that the critical issue on the merits of plaintiff's claim is whether RRF vessels are under the jurisdiction of the Secretary of the Navy for purposes of 10 U.S.C. § 7310(a).  Defendants deny that RRF vessels are under the jurisdiction of the Secretary of the Navy for the reasons explained in their moving papers and reply memorandum.

7.      Deny, and aver that the MOA was entered into by the Commander in Chief, U.S. Transportation Command, on behalf of DoD, and the Administrator of MARAD, on behalf of DOT.  *See* Defendants' Exhibit 7.  Defendants further aver that, even if the MOA were construed as reflecting the signatories' "joint understanding of the

Congressional intent of Section 7310(a)," this interpretation of the statue is entitled to no deference as a matter of law because the Secretary of the Navy is not a party to the MOA. *See, e.g., City of Olmsted Falls v. FAA*, 292 F.3d 261, 270 (D.C. Cir. 2002) ("[W]hen we are faced with an agency's interpretation of a statute *not* committed to its administration, we give no deference.") (emphasis in original).

8.    Deny because plaintiff has misquoted Paragraph 5(b) of the MOA; however, there is no genuine issue about the contents of the MOA, and the Court is respectfully referred to that agreement for a complete and accurate statement thereof. *See* Defendants' Exhibit 7.

9.    Admit except to deny plaintiff's characterization of COMSCINST 4700.15A as "[a]n after-the-fact internal agency instruction." As demonstrated in defendants' moving papers and reply memorandum, COMSCINST 4700.15A stands as the Navy's official interpretation of Section 7310(a) and is entitled to *Chevron* deference. Furthermore, plaintiff is foreclosed from denying that COMSCINST 4700.15A is entitled to *Chevron* deference by the doctrine of res judicata because of the final judgment entered against plaintiff in *Guam Industrial Services, Inc. v. United States*, Case No. 03-706C (Ct. Fed. Cl. June 9, 2003) [Defendants' Exhibit 2], where the United States Court of Federal Claims found that COMSCINST 4700.15A was "the controlling agency instruction" and was entitled to *Chevron* deference. *See id.* at pp. 2 & 7. Indeed, plaintiff itself has previously conceded in the instant case that COMSCINST 4700.15A is "[t]he controlling

regulation." *See* Plaintiff's Motion for Reconsideration and Correction, and Supporting Points and Authorities, ¶ 5 at p. 3 (R. 12, filed August 26, 2005).

10.    This assertion is a legal conclusion that defendants deny for the reasons set forth in Paragraphs 7 and 9 above.

*    *    *

Local Civil Rules 7(h) and 56.1 provide that "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such fact is controverted in the statement of genuine issues filed in opposition to the motion." Therefore, to the extent facts set forth in defendants' statement of material facts have not been properly disputed in plaintiff's statement of genuine issues, those facts should be deemed admitted. *See, e.g., Burke v. Gould*, 286 F.3d 513, 517-20 (D.C. Cir. 2002).

Respectfully submitted,

_____
KENNETH L. WAINSTEIN
D.C. Bar No. 451058
United States Attorney

_____
R. CRAIG LAWRENCE
D.C. Bar No. 171538
Assistant United States Attorney

_____
DANIEL F. VAN HORN
D.C. Bar No. 924092
Assistant United States Attorney

-5-

_____
KATHLEEN M. KONOPKA
Assistant United States Attorney

United States Attorney's Office
Civil Division, Room E-4816
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7168
daniel.vanhorn@usdoj.gov

OF COUNSEL:

JANIS RODRIGUEZ, Esq.
Maritime Administration
U.S. Department of Transportation

ALAN W. MENDELSOHN, Esq.
CHARNA SWEDARSKY, Esq.
Department of the Navy