UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| GUAM INDUSTRIAL SERVICES, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-1599 (RMU) |
| | : | | |
| v. | : | Document No.: | 18 |
| | : | | |
| DONALD H. RUMSFELD, | : | | |
| Secretary of Defense *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

GRANTING IN PART AND DEFERRING RULING IN PART
THE DEFENDANTS' MOTION TO DISMISS

I.   INTRODUCTION

The plaintiff, Guam Industrial Services ("GIS"), is a shipyard in Guam which claims that the United States Navy's bid proposal and contract procurement practices violate 10 U.S.C. § 7310.[1] GIS seeks to enjoin the defendants[2] from soliciting bid proposals and contracting for repairs of Navy vessels from shipyards not located in either the United States or Guam. Before the court is the defendants' motion to dismiss. Because the naval vessels at issue in this case are not under the jurisdiction of the Secretary of the Navy, the defendants' bid proposal process does

---

[1]   Section 7910(a) is a "Buy America" provision which directs the Department of the Navy to contract with United States shipyards in the repair and maintenance of vessels under its jurisdiction. 10 U.S.C. § 7910(a); *Guam Indus. Servs., Inc. v. United States*, No. 03-706C (Fed. Cl. 2003) at 3.

[2]   The defendants are Donald Rumsfeld, Secretary of the U.S. Department of Defense ("DoD"), Gordon England, Secretary of the Department of Navy ("Navy"), Norman Mineta, Secretary of the Department of Transportation ("DOT"), and John Jamain, Acting Administrator of the Maritime administration ("MARAD").

not violate 10 U.S.C. § 7310.  For this reason, the court grants the defendants' motion to dismiss the plaintiff's 10 U.S.C. § 7310 claims.

The plaintiff also claims that the defendants are acting in violation of a Memorandum of Agreement between the Department of Defense ("DoD") and the Department of Transportation ("DOT") as well as a Ship Manager Contract executed by the Maritime Administration ("MARAD").  Compl. ¶¶ 28-30, 34, 36-37.  The defendants have likewise moved to dismiss these claims.  Because a resolution of this issue involves a complicated legal question as to the enforceability of these documents against the agency and because the parties' briefing is inadequate, the court defers ruling on the defendants' motion to dismiss as to this issue and directs the parties to submit supplemental briefing to the court within 30 days of this memorandum opinion.[3]

## II.   BACKGROUND

### A.   Factual Background

The plaintiff owns and operates Guam Shipyard, located in the U.S. Territory of Guam. Mem. Op. (Aug. 24, 2005) ("Mem. Op.") at 2.  The Guam Shipyard employs approximately two

---

[3]   The parties' briefing shall be limited to twenty-five double-spaced pages and shall include detailed discussion (with pincites) of this circuit's law regarding the *Accardi* doctrine, *Jackson v. Culinary Sch. of Wash., Ltd.* 27 F.3d 573 (D.C. Cir. 1994), and *Vietnam Veterans of America v. Sec'y of the Navy*, 843 F.2d 528 (D.C. Cir. 1988). Furthermore, the parties are directed to include an analysis of the relevance of any factual similarities and differences between the Memorandum of Agreement and Contract at issue in this case with the Claims Manual at issue in *Schweiker v. Hansen*, 450 U.S. 785, 789-90 (1981), the Packard Memorandum in *Vietnam Veterans of America*, 843 F.2d at 530, as well as all other cases which the parties deem relevant and instructive.

hundred and fifty people – all U.S. citizens, and is "the only United States-citizen owned and controlled shipyard that can service United States Navy, Military Sealift Command ("MSC"), and MARAD ships that are under the jurisdiction of the Secretary of Navy and located in the Pacific and Indian Oceans." *Id.*

A select group of Navy vessels are part of the Navy's Prepositioning Program, a program funded and administered by the Navy and controlled by the Navy's Sealift Command. *Id.* These ships are positioned by the Navy in strategic oceanic locations, "making it possible to deploy equipment, fuel, and supplies to support U.S. military forces on short notice during times of war or as a result of other contingencies." *Id.*

The Navy also maintains a fleet of maritime vessels in the United States Ready Reserve Force ("RRF"). These vessels constitute a select group of ships within the National Defense Reserve Fleet, are maintained by the DOT's MARAD, and are funded from the Navy-controlled National Defense Sealift Fund. *Id.*

### B.   Procedural Background

On August 10, 2005, the plaintiff filed its complaint in this case, and on August 23, 2005, the plaintiff filed a motion for a temporary restraining order ("TRO"). In its motion for a TRO, the plaintiff sought to temporarily enjoin the defendants from servicing the Naval vessel SS Petersburg by a shipyard in Singapore. Mem. Op. at 1-2. Because the repair work was set to commence on August 23, 2005, the court ordered extremely expedited briefing on the legal issues presented. The following day, the court issued a memorandum opinion denying the plaintiff's motion for a TRO. Mem. Op. The court ruled that the plaintiff failed to demonstrate all four elements required for a TRO. *See* Mem. Order (Sept. 30, 2005) at 2. Pertinent to the

issues presented by the instant motion, the court ruled that the Secretary of the Navy's interpretation of 10 U.S.C. § 7310 was entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984), and was reasonable, and that the plaintiff failed to support the contention that it had standing to challenge the provisions of a memorandum of agreement between the DoD and the MARAD. *Id.*

The defendants now move to dismiss. In short, the defendants argue that their interpretation of 10 U.S.C. § 7310 is entitled to deference by the court and that the interpretation is reasonable, and that the DoD's memorandum of agreement with the DOT and MARAD's Ship Manager contract do not create enforceable private rights.[4] The court now turns to this motion.

### III.  ANALYSIS

#### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and

---

[4] In its complaint, the plaintiff also sought relief in the form of a preliminary injunction for repair work to the SS Petersburg being performed by a Shipyard in Singapore. Compl. ¶¶ 12-18. The plaintiff now indicates that it is no longer seeking this relief given the court's ruling on this issue in its August 24, 2005 Memorandum Opinion. Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl's Opp'n") at 2 n.2, 7.

defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

> **B.  The Court Grants the Defendants' Motion to Dismiss the Plaintiff's Claims Under 10 U.S.C. § 7310(a)**
>
> **1. The *Chevron* Analysis**

In determining whether an agency proffers a permissible interpretation of a statute it administers, the court employs the two-step Chevron analysis. *Chevron U.S.A., Inc.*, 467 U.S. at 842-43. As a threshold matter, the court "must first exhaust the traditional tools of statutory

construction to determine whether Congress has spoken to the precise question at issue." *Halverson v. Slater*, 129 F.3d 180, 184 (D.C. Cir. 1997) (internal quotations omitted). If, after applying accepted canons of construction, the court determines that Congress has spoken to the precise issue, "then the case can be disposed of under the first prong of Chevron." *Halverson*, 129 F.3d at 184 (internal quotations omitted). If the court determines that the statute is silent or ambiguous with regard to the issue, however, the second prong of Chevron directs the court to defer to a permissible agency construction of the statute. *Id.* (internal quotations omitted).

With regard to Chevron step one, "the starting point, and the most traditional tool of statutory construction, is to read the text itself." *S. Calif. Edison Co. v. Fed. Energy Regulatory Comm'n*, 195 F.3d 17, 23 (D.C. Cir. 1999). The court should not limit itself to examining a statutory provision in isolation but must look to the language and design of the statute as a whole, as "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000); *S. Calif. Edison*, 195 F.3d at 23. In addition, the court may look to legislative history. *Citizens Coal Council v. Norton*, 330 F.3d 478, 481 (D.C. Cir. 2003). To evaluate omissions of language, courts take note that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Halverson*, 129 F.3d at 186 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). This canon of construction, however, applies only to sections enacted within the same legislative act. *Id.*

The Supreme Court further stated that an agency interpretation is entitled to deference when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001). The court, quoting *Chevron*, reiterated that if Congress "left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation" and therefore, "any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *Id.* at 227 (citing *Chevron*, 467 U.S. at 843-844).

### 2. 10 U.S.C. § 7310(a) is Silent as to the Definition of Vessels Under the Jurisdiction of the Secretary of the Navy

The court begins its *Chevron* analysis by considering whether in section 10 U.S.C. § 7310(a), "Congress has spoken to the precise question at issue." *Halverson*, 129 F.3d at 184. Section 7310(a) states:

> A naval vessel (or any other vessel under the jurisdiction of the Secretary of the Navy) the homeport of which is in the United States may not be overhauled, repaired, or maintained in a shipyard outside the United States or Guam, other than in the case of voyage repairs.

10 U.S.C. § 7310(a).

The court previously ruled that the United States and Guam are discrete entities under this statutory provision. Mem. Op. at 5-6 ("fathom[ing] no way to ignore the disjunctive 'or' preceding Guam" without violating the presumption that every word in the statute has effect) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338-339 (1979)). Here, the central issue presented to the court is whether the Ready Reserve Force fleet is "under the jurisdiction of the

Secretary of the Navy."  Defs.' Reply at 5; Pl.'s Opp'n at 8.

By its terms, 10 U.S.C. § 7310(a) applies only to those ships that are, *inter alia*, "a naval vessel (or any other vessel under the jurisdiction of the Secretary of the Navy)."  10 U.S.C. § 7310(a).  The face of the statute, however, does not provide a method for determining whether Ready Reserve Force vessels are under the jurisdiction of the Secretary of the Navy.  Because of this ambiguity, the court must look to the agency's interpretation and determine whether that interpretation is reasonable.  *Chevron*, 467 U.S. at 845.

        **3.**    **The Secretary of Navy's Interpretation of 10 U.S.C. § 7310(a) is Reasonable and Indicates that RRF Vessels are Not Under the Jurisdiction of the Secretary of the Navy**

An agency interpretation is afforded deference when "it appears that Congress delegated authority to the agency generally make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."  *Mead Corp.*, 533 U.S. at 226-227.  Thus, before according deference to the Secretary of the Navy's interpretation of 10 U.S.C. § 7310(a), the court must determine whether interpretation of Section 7310(a) is sanctioned by congressional delegation.

Under 5 U.S.C. § 301, "the head of an Executive department or military department may prescribe regulations for the government of his department."  5 U.S.C. § 301 (1966).  Specific to the Navy, 10 U.S.C. § 5013(g) provides that the Secretary of the Navy may "prescribe regulations to carry out his functions, powers, and duties under this title."  The "powers" and "duties" under 10 U.S.C. § 5013 include, *inter alia*, "the functioning and efficiency of the Department of the Navy," "the formulation of policies and programs by the Department of the Navy," and "the effective and timely implementation of policy, program, and budget decisions and instructions of

8

the President or the Secretary of Defense relating to the functions of the Department of the Navy." 10 U.S.C. § 5013(c). From these statutory provisions, the court is satisfied that the Secretary of the Navy has the requisite "delegated authority to . . . make rules carrying the force of law." *Mead Corp.*, 533 U.S. at 226-227. The court now turns to whether the Secretary of the Navy's interpretation of 10 U.S.C. § 7310(a) is reasonable.

Commander Military Sealift Command Instruction 4700.15A ("COMSC 4700.15A") encompasses the Secretary of the Navy's interpretation of 10 U.S.C. § 7310(a). Defs.' Mot. at 10. Among other things, the instruction contains a definition of vessels under the jurisdiction of the Secretary of the Navy, stating that

> vessels under the jurisdiction of the Secretary of the Navy include USNS ships and ships which are bareboat chartered. MARAD's Ready Reserve Force *(RRF)* vessels, MSC time chartered ships . . . and voyage chartered ships are not considered to be under the jurisdiction of the Secretary of the Navy and therefore are not required to comply with the provisions of Title 10 U.S. Code, Section 7310(a).

COMSC 4700.15A at 4(d) (emphasis in original).

The Secretary of the Navy's interpretation is reasonable because it delineates the precise vessels that fall under the Secretary of Navy's jurisdiction as opposed to the jurisdiction of other

agencies – e.g. the Department of Transportation.[5]  *See* 50 App. U.S.C.A. § 1744 (a) (stating that "[t]he Secretary of Transportation shall maintain a National Defense Reserve Fleet, including any vessel assigned to the Ready Reserve component of the fleet"); *Chevron*, 467 U.S. at 845 (holding that if the agency's interpretation "represents a reasonable accommodation . . . we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned").  Because the Secretary of the Navy's interpretation of 10 U.S.C. § 7310(a) is reasonable, it controls.  Under COMSC 4700.15A at 4(d), "MARAD's Ready Reserve Force *(RRF)* vessels . . . are not considered to be under the jurisdiction of the Secretary of the Navy."  COMSC 4700.15A at 4(d).

This court's ruling is consistent with the United States Court of Federal Claims' ruling in *Guam Indus. Servs., Inc. v. United States*, No. 03-706C (Fed. Cl. 2003).  In that case, the plaintiff brought a surprisingly similar lawsuit arguing that the Navy was violating 10 U.S.C. § 7310(a) by contracting with foreign shipyards for repair of MSC vessels.  *Guam Indus. Servs., Inc. v. United States*, No. 03-706C (Fed. Cl. 2003).  The Court of Federal Claims, in granting the defendant's motion to dismiss, ruled that the Secretary of the Navy's interpretation of 10 U.S.C. § 7310(a) is

---

[5]  The plaintiff argues that jurisdiction over these vessels need not be exclusive.  Pl.'s Opp'n at 9 (citing *United States v. Corey*, 232 F.3d 1166 (9th Cir. 2000) (stating that "there is no question that domestic lands may fall under the concurrent jurisdiction of the state and federal governments")).  The United States' dual federal and state government regime has little applicability to shared jurisdiction within the federal government's executive department.  Assuming *arguendo* that the law permitted concurrence of jurisdiction as between executive branches, the Secretary of the Navy's decision to minimize the overlap, by defining that which falls precisely within the Navy's jurisdiction and defining that which falls outside of the Navy's jurisdiction can hardly be said to be unreasonable.  *Fed. Election Comm'n v. Nat'l Rifle Ass'n of America*, 254 F.3d 173 (D.C. Cir. 2001) (holding that "courts are bound to uphold an agency interpretation as long as it is reasonable – regardless whether there may be other reasonable, or even more reasonable, views") (quoting *Serono Labs.. Inc. v. Shalala*, 158 F.3d 1313, 1321 (D.C. Cir. 1998)).

reasonable. *Guam Industrial Services, Inc.*, No. 03-706C, Order (Fed. Cl. June 9, 2003) at 6. As that court stated, the plaintiff's position "most poignantly demonstrates . . . that the law carries – and has always carried – a loophole. The plaintiff may disagree with the loophole but it is, in fact, part of the law." *Id.*

Recognizing that the Secretary of the Navy was utilizing the statute's loophole to contract with foreign shipyards, the court recognized that despite having many opportunities to tighten the language in the statute, Congress has "not ventured to change" the statutory regime. *Id.* at 6-7. The court then recognized that the plaintiff wanted the court "do what like-minded interests inside and outside Congress have failed to do – amend Section 7310(a)." *Id.* This court is persuaded by the Court of Federal Claims' analysis and likewise declines the plaintiff's invitation to tinker with section 7310(a) by transmuting its meaning into something it does not say through judicial alchemy. For this reason, the court will not invalidate the Secretary of the Navy's reasonable interpretation of section 7310(a). It is the judgment of this court that COMSC 4700.15A at 4(d) represents a reasonable interpretation of 10 U.S.C. § 7310(a), and by its plain terms excludes RRF vessels from the "Buy America" requirement in 10 U.S.C. § 7310(a). For this reason, the court grants the defendant's motion to dismiss as to the plaintiff's claim under 10 U.S.C. § 7310(a).

Additionally, the parties are directed to submit supplemental briefing with regard to the enforceability of the DoD and DOT's Memorandum of Agreement and the Ship Manager Contract as set forth in footnote 3 of this Memorandum Opinion.

### IV. CONCLUSION

11

For the foregoing reasons the court, this 19th of December, 2005, grants in part and defers ruling in part on the defendants' motion to dismiss. An order instructing the parties in a manner consistent with this Memorandum Opinion is issued contemporaneously herewith.

                                                RICARDO M. URBINA
                                         United States District Judge