## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| GUAM INDUSTRIAL SERVICES, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-1599 (RMU) |
| | : | | |
| v. | : | Document No.: | 18 |
| | : | | |
| DONALD H. RUMSFELD, | : | | |
| Secretary of Defense, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1]

### I.    INTRODUCTION

The plaintiff, Guam Industrial Services ("Guam Shipyard"), is a shipyard in Guam which claims that the United States Navy's bid proposal and contract procurement practices violate the terms of a contract (hereinafter, "the Ship Manager Contract" or "SMC") executed by the Maritime Administration ("MARAD") on behalf of the Department of Transportation ("DOT"). The plaintiff also claims that the Navy's bid proposal and contract procurement practices violate the terms of a memorandum of agreement ("MOA") between MARAD and the Department of Defense ("DoD"). Guam Shipyard seeks to enjoin the defendants[2] from soliciting bid proposals

---

[1]    The defendants characterized their motion as a motion to dismiss or for summary judgment. Because the defendants motion relies on extrinsic evidence, the court treats it herein as a motion for summary judgment. *Bastin v. Fed. Nat'l Mortgage Ass'n*, 104 F.3d 1392, 1395 (D.C. Cir. 1997).

[2]    The defendants are Donald Rumsfeld, Secretary of the U.S. Department of Defense ("DoD"), Norman Mineta, Secretary of the Department of Transportation ("DOT"), John Jamain, Acting Administrator of the Maritime Administration ("MARAD"), and Gordon England, Secretary of the Department of Navy ("Navy"). The court substitutes the current Secretary of the Navy, Donald C. Winter, acting in his official capacity, for his predecessor Gordon R. England. FED. R. CIV. P. 25(d)(1).

and contracting for repairs of Navy vessels from shipyards not located in either the United States or Guam.

Before the court is the defendants' motion for summary judgment as to the plaintiff's claims under the SMC and the MOA.  Because the SMC permits repairs for naval vessels designated as prepositioned ships, it does not prevent the defendants from contracting for repairs to the SS Petersburg by foreign ship repair facilities.  Furthermore, because 10 U.S.C. § 7310 does not apply to the SS Petersburg, the MOA does not constrain IASC from executing repair contracts with foreign ship repair facilities.  For these reasons, the court grants the defendants' motion for summary judgment as to the plaintiff's claims.

## II.     BACKGROUND

### A.     Factual Background

The plaintiff is a shipyard located in the U.S. Territory of Guam.  Mem. Op. (Aug. 24, 2005) ("Aug. Mem. Op.") at 2.  The Guam Shipyard employs approximately two hundred and fifty people – all U.S. citizens – and is "the only United States-citizen owned and controlled shipyard that can service United States Navy, Military Sealift Command ("MSC"), and MARAD ships that are under the jurisdiction of the Secretary of Navy and located in the Pacific and Indian Oceans." *Id.*

A select group of Navy vessels are part of the Navy's Prepositioning Program, a program funded and administered by the Navy and controlled by the Navy's Sealift Command. *Id*.  These ships are positioned by the Navy in strategic oceanic locations, "making it possible to deploy equipment, fuel, and supplies to support U.S. military forces on short notice during times of war or as a result of other contingencies." *Id*.

2

The Navy also maintains a fleet of maritime vessels in the Unites States Ready Reserve Force ("RRF"), which are a select group of ships within the National Defense Reserve Fleet. *Id.* at 3. They are maintained by the DOT's MARAD and are funded from the Navy-controlled National Defense Sealift Fund. *Id.*

The Navy vessel SS Petersburg is designated both within the Navy's Prepositioning Program and MARAD's National Defense Reserve Fleet. *Id.* While on assignment as a vessel in the RRF, the SS Petersburg is maintained and controlled by the DOT's MARAD, but when activated under the Navy's strategic Prepositioning Program, the vessel is maintained and controlled by the Navy and the Navy's Military Sealift Command. *Id.*

The SS Petersburg has been located or "prepositioned" in the U.S. Territory of Guam at the Delta-Echo Pier in Apra Harbor for the past three years. *Id.* Daily control of the SS Petersburg is delegated to one of the three Maritime Prepositioning Ship squadrons ("MSPRONs"). *Id.* The vessel's specific mission while located in Guam is to provide offshore petroleum distribution services to the Defense Logistic Agency. *Id.*

IASC is a corporation that provides ship management services to MARAD for the SS Petersburg. *Id.* Under the terms of the Ship Manager Contract ("SMC") with MARAD, IASC solicited bids for drydock work and repairs of the SS Petersburg on June 21, 2005. *Id.* In response to this solicitation, the plaintiff submitted a bid proposal. *Id.* On August 16, 2005, IASC accepted a bid from the Keppel Shipyard in Singapore for repairs to the SS Petersburg. *Id.*

## B.  Procedural Background

On August 10, 2005, the plaintiff filed its complaint in this case, and on August 23, 2005, the plaintiff filed a motion for a temporary restraining order ("TRO"). In its motion for a TRO, the plaintiff sought to temporarily enjoin the defendants from servicing the Naval vessel SS

Petersburg by the Singaporean Shipyard.  Aug. Mem. Op. at 1-2.  Because the repair work was

set to commence on August 23, 2005, the court ordered extremely expedited briefing on the legal

issues presented.  The following day, the court issued a memorandum opinion denying the

plaintiff's motion for a TRO.  Aug. Mem. Op.  The court ruled that the plaintiff failed to

demonstrate any of the four elements required for a TRO.  *See* Mem. Order (Sept. 30, 2005) at 2.

Specifically, the court ruled that the Secretary of the Navy's interpretation of 10 U.S.C. § 7310

was entitled to deference under the *Chevron* doctrine[3] and was reasonable, and that the plaintiff

failed to support the contention that it had standing to challenge the provisions of the

memorandum of agreement between the DoD and MARAD.  Mem. Order at 2.

On December 19, 2005, the court issued a memorandum opinion dismissing part of the

plaintiff's claims.  Mem. Op. (Dec. 19, 2005) ("Dec. Mem. Op.").  The court concluded that the

Secretary of Navy's interpretation provided a reasonable definition of those vessels falling under

the jurisdiction of the Secretary of the Navy.  *Id*. at 11.  Under this definition, RRF vessels (like

the SS Petersburg) are not subject to the "Buy America"[4] requirement in 10 U.S.C. § 7310(a).  *Id*.

Accordingly, the court dismissed the plaintiff's statutory claims.  *Id*.

The court reserved judgment on the plaintiff's claims under the MOA and under the SMC

pending further briefing by the parties.  *Id*. at 2.  The court now turns to these remaining claims.

---

[3]     *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

[4]     Section 7910(a) is a "Buy America" provision which directs the Department of the Navy to contract with United States shipyards in the repair and maintenance of vessels under its jurisdiction.  10 U.S.C. § 7910(a); *Guam Indus. Servs., Inc. v. United States*, No. 03-706C (Fed. Cl. 2003) at 3.

4

### III.    ANALYSIS

#### A.    Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,

154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable

a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477

U.S. at 249-50 (internal citations omitted).

### C. The Court Grants the Defendants' Motion for Summary Judgment as to the Plaintiff's Claims Under the Ship Manager Contract

The plaintiff claims that the SMC executed by MARAD is binding on IASC and prohibits

IASC from contracting with foreign ship repair facilities for repairs to the SS Petersburg.

Compl., Prayer for Relief ¶¶ 4, 6. The plaintiff bases its claim on a specific provision of a 1996

version of the SMC ("1996 SMC"), which states that "[a]ll repair and or upgrading work

required in conjunction with the contract . . . shall be accomplished in a U.S. shipyard or a U.S.

ship repair facility, unless the work is an emergency." Compl. ¶ 30 (citing 1996 SMC).[5]

Although both the plaintiff and the defendants agree that this version of the SMC has

been superceded, Pl.'s Mot. for Recons. ¶ 2; Defs.' Opp'n to Pl.'s Mot. for TRO at 12, the

plaintiff maintains that "all subsequent MARAD ship manager contracts contain[ ] similar

requirements [as the 1996 SMC]," Compl. ¶ 31; Pl.'s Mot. for Recons. ¶ 2. The plaintiff is

incorrect. Since the year 2000, SMCs have provided that "[a]ll repair and/or upgrading work

required in conjunction with the contract . . . shall be accomplished in a U.S. ship repair facility,

unless the work is for emergency, or mission essential repairs, *or for pre-positioned ships which*

*are deployed overseas*, or for any vessel forward deployed outside of the United States." Defs.'

Mot. ("Defs.' Mot."), Ex. 3 ("Cahill Decl."), Attach. C ("Ship Manager Contract"), Section 2.4.6

---

[5]     The defendants assert that the plaintiff, in fact, references a 1993 version of the SMC. Defs.' Supp. Mem. at 11 n. 4. Because this discrepancy is not material to the resolution of the plaintiff's claims, the court need not inquire further.

(emphasis added).

The plaintiff acknowledges that the SS Petersburg is part of the MSC Prepositioning Program and that it has been prepositioned in Guam. Compl. ¶¶ 13, 18. Moreover, a 2000 version of the SMC includes the SS Petersburg in a list of prepositioned vessels.[6] Defs.' Supp. Mem. at 11 n. 5 (referencing the 2000 Ship Manager Contract, Technical Exhibit 8). Because the SS Petersburg is a prepositioned ship deployed overseas, it is exempt from the SMC clause requiring repair work in a U.S. repair facility. Accordingly, the court grants the defendants' motion for summary judgment as to the plaintiff's claim under the SMC.

### D.    The Court Grants the Defendants' Motion for Summary Judgment as to the Plaintiff's Claims Under the Memorandum of Agreement

DoD and MARAD, on behalf of the DOT, entered into the MOA on August 26, 1997 for the purpose of identifying "the relationship and responsibilities of the DoD and the DOT in the administration of the [National Defense Reserve Fleet] program, including: the acquisition, lay-up, berthing and maintenance of ships in the RRF[.]" Defs.' Mot., Ex. 7 ("MOA") ¶ 2. Both the plaintiff and the defendants agree that the MOA has not been superceded and remains "an operative government policy statement and interpretation of its own duties." Pl.'s Mot. for Recons. ¶¶ 2-3; Defs.' Opp'n to Pl.'s Mot. for Recons. at 5.

Federal agencies are required to "follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions." *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). The

---

[6]    Because neither the plaintiff nor the defendants have supplied the court with Technical Exhibit 8 (or its equivalent) of the 2005 version, the court has no information as to whether the 2005 SMC designates the SS Petersburg as a prepositioned vessel, though the plaintiff has not argued to the contrary.

touchstone of the "*Accardi* doctrine," as it is oft referred, is an agency's demonstrated intent to be bound to its own rules. *Nat'l Latino Media Coal. v. FCC*, 816 F.2d 785, 788 n.2 (D.C. Cir. 1987). "The 'binding' quality of a particular rule or statement will depend on whether the agency intended to establish a 'substantive' rule, one which is not merely interpretive but which creates or modifies rights that can be enforced against the agency." *Id*. Therefore, interpretive rules and policy statements alone will not bind an agency. *See id.*; *see also Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537-38 (D.C. Cir. 1988) (distinguishing between statements which suggest an intent to bind agency discretion and "interpretive rules or policy statements" which are not binding and from which the agency remains free to deviate).

The plaintiff argues that the MOA shows the DoD's and MARAD's clear intents to be bound to "the obligation to repair and maintain RRF ships in domestic shipyards in accordance with Section 7310(a)[.]" Pl.'s Supp. Mem. at 9. The plaintiff, however, concedes that the MOA is "an operative government policy statement and interpretation of its own duties," Pl.'s Mot. for Recons. ¶¶ 2-3. And because government agencies are not bound by their policy statements and interpretive rules, *Nat'l Latino Media Coalition*, 816 F.2d at 788 n.2, the MOA is not binding on MARAD or the DoD. *Vietnam Veterans*, 843 F.2d at 537-38; *see also Rochon v. Ashcroft*, 319 F. Supp. 2d 23, 29 (D.D.C. 2004)*, rev'd on other grounds*, 438 F.3d 1211 (ruling that "litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail").

Nevertheless, the defendants concede that the MOA is binding on DoD and MARAD as

parties to the agreement.[7]  *See* Defs.' Supp. Mem. at 13 (stating that "parties to an agreement obviously intend to be bound thereby").  But even if the MOA is binding on DoD and MARAD, the court would still grant the defendants' motion for summary judgment.  Paragraph 5(b) of the MOA requires that, "[a]ll shipyard and ship repair facility work to RRF ships will be accomplished by MARAD (either directly or through its ship operating companies) and performed in the United States (except for necessary voyage repairs while overseas), in accordance with statute and DOT regulations."  MOA ¶ 5(b).

The plaintiff urges the court to read the phrase "in accordance with statute" as "in accordance with 10 U.S.C. § 7310(a)."  Pl.'s Supp. Mem. at 9 (stating that "[p]aragraph 5(b) of this binding contract expresses a clear interagency recognition of the obligation to repair and maintain RRF ships in domestic shipyards in accordance with Section 7310(a)").  Surprisingly, the plaintiff's own reading of Paragraph 5(b) undermines its position.  Under this reading, the defendants would be bound by 10 U.S.C. § 7310(a).  But, as the court has previously noted,

---

[7]      The defendants do not, however, accept the plaintiff's underlying assumption that Guam Shipyard is an intended beneficiary of the MOA and that it has standing to enforce the agreement.  Defs.' Supp. Mem. at 13.  The court previously noted the plaintiff's failure to analyze its standing to enforce the provisions of an agreement to which it is not a party.  Aug. Mem. Op. at 12.  For a party to avail itself of the "exceptional privilege" of third party beneficiary status, "a party must 'at least show that [the contract] was intended for his *direct* benefit.'"  *Glass v. United States*, 258 F.3d 1349, 1354 (Fed. Cir. 2001) (emphasis in original) (citing *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912)); *see Data Marketing Co. v. United States*, 107 Fed. Appx. 187, 196 (Fed. Cir. July 8, 2004) (ruling that an interagency agreement did not create third party beneficiary status when the appellant was not referenced directly or indirectly in the agreement).  The plaintiff has failed to address this issue directly, and, as the defendants correctly point out, the plaintiff's standing as an intended beneficiary of the MOA is highly questionable at best.  Defs.' Supp. Mem. at 13; *Data Marketing*, 104 Fed. Appx. at 196.

"RRF vessels [are excluded] from the 'Buy America' requirement in 10 U.S.C. § 7310(a)."[8] Dec. Mem. Op. at 11.

Because the plaintiff has produced no applicable DOT regulation requiring domestic repair work to the SS Petersburg and because, under the court's previous ruling, 10 U.S.C. § 7310(a) does not apply to the SS Petersburg, the defendants are not violating the MOA's "in accordance with statute and DOT regulations" provision in contracting with a foreign shipyard. Dec. Mem. Op. at 11. Accordingly, the court grants the defendants' motion for summary judgment as to the plaintiff's claim under the MOA.

## IV.    CONCLUSION

For the foregoing reasons the court, this 24th day of July, 2006, grants the defendants' motion for summary judgment as to the plaintiff's remaining claims. An order instructing the parties in a manner consistent with this Memorandum Opinion is issued contemporaneously herewith.

RICARDO M. URBINA
United States District Judge

---

[8]    According to the plaintiff, "[COMSCINST 4007.15A], even if valid, cannot negate [the MOA's] broad, formal expression of interagency intent" to be bound to § 7310(a). Pl.'s Supp. Mem. at 11. The court, however, has already construed COMSCINST 4700.15A as a reasonable interpretation of § 7310(a). Dec. Mem. Op. at 11. Therefore, any inclusion of § 7310(a) in reading the MOA must account for the Navy's reasonable interpretation of this statute.